STROTHER *ET AL.* v. FOLK *ET AL.*

(115 S. E., 605)

WILLS—DEVISE HELD TO CREATE FEE CONDITIONAL UNDER RULE IN SHELLEY'S CASE.—A will providing that all property bequeathed to testator's daughter, Julia, should "be and remain to her during her natural life and to descend to the heirs of her body, and if she, tne said Julia, should die without issue or children of her body, the said property to. return to my son, Moses," *held* to give the daughter a fee conditional under the rule in Shelley's Case, and not merely a life estate with remainder over.

. Before TOWNSEND, J., Saluda, January, 1921.   Reversed.

Action for partition by Jane Purdy Strother, *et al.*, against E. H. Folk, *et al.*   Judgment for plaintiffs and defendants appeal.

The DECREE of JUDGE TOWNSEND follows:

It is admitted that J. A. C. Long died the 14th July, 1848, leaving of force his will, whereby he devised the tract of land, described in the complaint, as containing three hundred and seventy acres, more or less, situate in Saluda County and State of South Carolina, bounded now or formerly as follows: on the North by lands of A. P. Bouknight and of Cothran Bodie; on the East by lands of A.′ P. Bouknight and of N. A. Bates; on the South by lands of N. A. Bates, and on the West by lands of C. H. Jones, and being the land on which John Long lived at the time said will was made, and sought to be partitioned in this action, to his daughter, Julia Ann Long, then an unmarried child of fourteen years, and provided: "That all the property, both real and which I have willed and bequeathed to said Julia Ann Long, or which shall accrue to her under said will and testament, shall be and remain to her during her natural life, and to descend to the heirs of her body, and if she the said Julia Ann Long should die without issue or children of her body the said property to return to my son, Moses Long."

On 21st January, 1851, Julia Ann Long intermarried with Dr. H. M. Folk, who predeceased her.   She died 31st December, 1909, having had the three following named children: (1) William H. Folk, born 4th September, 1852, died intestate 17th May, 1898, leaving as his heirs his widow, Elizabeth H. Folk, and one child, Julia Folk, defendants herein: (2) Clara Annette Folk, born 12th June, 1854, who intermarried with Dr. E. F. Strother in 1870, who predeceased her.   She died intestate 21st May, 1910, leaving as her sole heir her son, Edwin F. Strother, born:

2d September, 1875, who died intestate 29th July, 1915, leaving as his heirs, his widow, Mrs. Jane Purdy Strother, and three infant children, plaintiffs in this action: (3) Edwin H. Folk, born 25th December, 1863, defendant herein. On 4th November, 1896, said Julia Ann Folk, nee Long, executed and delivered her deed whereby she undertook to convey said lands acquired by her under said will of J. A. C. Long to two of her said children, W. H. Folk and E. H. Folk, in fee.

The sole question to be determined in this case, is whether said deed from Julia Ann Folk operated to convey the fee in said land to the grantees, W. H. Folk and E. H. Folk, or whether the defendants, who claim under said deed, and the plaintiffs, are tenants in common of said lands, as remaindermen after the expiration of a life estate given Julia Ann Folk under said will.

I cannot say that the case is free from difficulty, but upon the best consideration I have been able to give it, I think J. A. C. Long, the testator, in his will used the words "heirs of her body" as synonymous with "children of her body," and gave a life estate to Julia Ann Folk, with a remainder which vested in her children as they were born.

The rule is stated by Sir John Romilly, Master of Rolls, in *Gommoe v. Harris,* 23 Beavan, 184, 187; 53 English Reports, full reprint, 72, to this effect: "That in wills the words 'heirs of the body' are words of limitation, and that they are never to be used as words of purchase, unless they are controlled by clear and express words, showing that the testator used them as synonymous with children or some other class. Therefore, in all cases where the words 'heirs of the body' are used, the devisee takes an estate tail, unless the intent of the testator to the contrary is so clearly expressed that no one can misunderstand it. Thus, for instance, where a testator devised to one and the heirs of his body, and went on to explain those words by saying, that is to say, to his first and other sons successively, and the

heirs of the body of such first and other sons, which is the case in *Lowe v. Davies,* 2 Ld., Raymond, 1561 and 2 Strange, 849; Fitz., 112; there the testator expressly states that by the words, heirs of the body, he means sons. There is no rule of law which forbids a testator from employing the words heirs of the body in the sense of children if he pleases so to do, provided he makes his meaning plain; but it is equally clear that in order to arrive at the result, the words of explanation used by the testator must be distinct and susceptible of no other meaning, and if they are ambiguous they do not control the effect of the words 'heirs of the body.'" See our cases of *Duckett v. Butler,* 67 S. C., 130; *Guy v. Osborne,* 91 S. C., 293; *Pearson v. Easterling,* 104 S. C., 178; *McWhirter v. Roseman,* 114 S. C., 177.

The testator says: "It is also my will and desire that all the property, both real and which I have willed and bequeathed to said Julia Ann Long, or which may accrue to her under said will and testament, shall be and remain to her during her natural life and descend to the heirs of her body." If the devise had stopped there, I should not have doubted that Julia Ann took a fee conditional. There would have been nothing to give a different meaning to the words, "heirs of her body," than their primary legal acceptation. But the will goes on thus: "And if she, the said Julia Ann Long, should die without issue or children of the body, the said property to return to my son, Moses Long." This second clause is not contrary to that immediately preceding, but explains what heirs of the body the testator meant. *Lowe v. Davies, supra; North v. Martin,* 6 Simons, 266; *Milroy v. Milroy,* 14 Simons, 54; 60 Eng. Reports, Full Reprint, 277. It shows to whom the testator intended the property to go upon the death of his daughter—that is, to the children of her body; that the words "heirs of her body" mean "children of her body," and provided for a contingency upon

which the property primarily intended for the children of
Julia Ann should go over to their uncle, Moses Long.
*Dott v. Wilson,* 1 Bay., 457, 458; *Ramsey v. Joyce,* 1 Mc-
Mul. Ch., 245; *Moone v. Henderson,* 4 DeS. Eq., 459, 461.
*McIntyre v. McIntyre,* 16 S. C., 296; *Lott v. Thomson,*
36 S. C., 44; *Robert v. Ellis,* 59 S. C., 137, 139, 150, 157;
*Still v. Creech,* 95 S. C., 368.   This case is distinguishable
from *Thomson v. Peake,* 38 S. C., 440, and *Davis v. Hodge,*
102 S. C., 178, 183, as in those cases there was no direct
gift to the "heirs of the body" or children of the first
taker; while here there is a direct gift of the remainder,
after the life estate of Julia Ann to the children of her
body, under the name "heirs of the body."

It is therefore adjudged and decreed that the plaintiffs
and the defendants, E. H. Folk, Elizabeth Folk and Julia
Folk, are cotenants of the lands mentioned in the com-
plaint and above described, and are respectively seized of
undivided interests in said lands as follows:   Jane Purdy
Strother, one-ninth undivided interest therein; Annette
Folk Strother, Edwin Folk Strother and Harriette Purdy
Strother, each two twenty-sevenths undivided interest there-
in; E. H. Folk one undivided third interest therein; Eliza-
beth Folk one-ninth undivided interest therein and Julia
Folk two-ninths undivided interest therein.

It is further ordered that a writ of partition do issue out
of this Court to commissioners, as provided by law, direct-
ing them to partition said lands between said parties ac-
cording to their respective rights as adjudged.

It is further ordered that any of the parties to this ac-
tion have leave to apply to the Court, at the foot of this
order, for such further order as may be necessary to the
partition of said lands between them according to their
respective rights.

*Messrs. Thurmond, Crouch & Ramage,* for appellants,
cite:   *Subsequent clause insufficient to cut down estate
previously given:*   77 S. C., 458; 4 Rich. Eq., 384; 29 S.

C., 470; 102 S. C., 11; 76 S. C., .36; 5 Rich. Eq., 356; 15 S. C., 440. *No estate by implication:* 1 McC. Ch., 61; 102 S. C., 11; Bail. Eq., 297. *Fee defeasible:* 2 Bail. Eq., 23; 38 S. C., 440; 32 S. C., 563; 41 S. C., 209; 30 S. C., 184; 102 S. C., 178; 102 S. C., 224; 102 S. C., 11; 105 S. E., 415. *Fee conditional:* 3 Rich. Eq., 384; 48 S. C., 440; 94 S. C., 308; 65 S. C., 345; 72 S. C., 227; 3 Rich: Eq., 271; 110 S. C., 531; 76 S. C., 487; 3 Jarm., Wills, 148; 52 S. C., 554; Bail. Eq., 48; 23 W. Va., 504. *"Issue":* 83 S. C., 265; 67 S. C., 309; 86 S. C., 237; 99 S. C., 307; 16 S. C., 294. *"Children":* 23 S. C., 238; 10 S. C., 365; 28 S. C., 242; 1 Hill Ch., 265; 2 McC. Ch., 323; 1 McC. 78; 12 Rich. Eq., 114; 9 Rich. Eq., 13. *Limitation is void:* 59 S. C., 155; 16 S. C., 325; 2 Brev., 355; 1 Spears L., 234.

*Messrs. R. O. Purdy* and *Efird & Carroll,* for respondents, cite: *Will gave life estate:* 67 S. C., 130; 91 S. C., 293; 104 S. C., 178; 114 S. C., 177; 107 S. C., 102; 4 DeS., 459; McMull. Eq., 245; Fearne, Rem., Sec. 584; 3 De. Ex., & J. Ch., 44; 1 Strob. L., 134; 6 Rich. Eq., 88; 6 Coke, 17; McMull., Eq., 345; 6 Rich. Eq., 402. *Gift over not too remote:* L. R. & E., 290; 2 Cuss & M. 416; L. C. B., 652; 2 Hare, 14.

December 29, 1922.

The opinion of the Court *en banc* was delivered by MR. CHIEF JUSTICE GARY. '

The provision of the will, out of which this action arose, is as follows:

"It is also my will and desire that all the property both real and which I have willed and bequeathed to said Julia Ann Long or which may accrue to her under said will and testament shall be and remain to her during her natural life and to descend to the heirs of her body, and if she the said Julia Ann Long should die without issue or children of her body the said property to return to my son, Moses Long."

The following appears in the agreed statement of facts:
"The sole question to be determined in this case is
whether or not, under the terms of the, will of J. A. C.
Long, deceased, herein attached, the said Mrs. Julia A.
Folk (nee Long) had the right and power to convey by
her deed of conveyance unto W. H. Folk and E. H. Folk,
the grantees therein, a fee-simple title to the aforesaid tract
of land; the plaintiffs' contention is that the said Julia A.
Folk had only a life estate in said tract of land and had no
right to convey anything more than a life estate therein;
the defendants' contention is that the said Mrs. Julia A.
Folk had the right and power to convey and did convey in
and by said deed of conveyance a fee-simple title to said
tract of land unto the said W. H. Folk and E. H. Folk, the
grantees, in said deed."

It will thus be, seen that, if the words "heirs of her body"
must be construed, under the rule in Shelley's Case, as creat-
ing a fee conditional, then the judgment of the Circuit
Court must necessarily be recovered. The only words in
the will which are to be relied upon to show that the testa-
tor did not use the words "heirs of her body" in their
ordinary acceptation as creating a fee conditional are the
words "issue or children of her body." "Issue" is a word
of limitation. *Williams v. Gause,* 83 S. C., 265, 65 S. E.,
241. On the other hand, "children of her body" are words
of purchase, unless the entire will shows otherwise. The
words "and if she the said Julia Ann Long should die
without issue or children of her body, the said property to
return to my son, Moses Long," are not to be construed as
a part of the granting clause, except in so far as they may
throw light upon the sense in which the words "heirs of
her body" were used; as an estate cannot be created by
implication. *Shaw v. Erwin,* 41 S. C., 209, 19 S. E., 499.
If the words "issue" and "children of her body" are both
words of limitation, then there is no inconsistency between
them and the words "heirs of her body." If, on the other

hand, the word "issue" and the words "children of her body" are both words of purchase, and refer to distinct clauses, then they are inconsistent with the words "heirs of her body," which refer to one class only, and this makes their import doubtful.

We here reproduce the following language of another member of this Court, as it brings out clearly the difference in our views:

"The real storm center of the controversy is, as to the effect of this superadded clause upon the question, whether the testator intended that the remainder after the life estate to the 'heirs of her body' should constitute a gift to 'a class of persons to take in succession from generation to generation' as the heirs of the body of the life tenant or as a gift to such heirs of the body of the life tenant as answered the description of the 'issue or children of her body' at the time of her death, they taking not indefinite succession as heirs of the body of the life tenant, but directly under the will from the testator, as the stock of a new inheritance. . * * * The intention of the testator is made manifest that Julia Ann should take only a life estate; he says so in the plainest terms; he then provides that at her death the estate should descend to the 'heirs of her body'; in the very next clause he translates this expression into 'issue or children of her body.' He evidently intended that upon the death of Julia Ann the estate should go to her children, and then, thinking that perhaps some of the children might die leaving children, he employed the word 'issue' so as to include the grandchildren in that event. He then provides for the contingency of Julia Ann dying without children or issue by a devise over to his son, Moses. The controversy is over the power of this Court to carry that intention into effect. It can be done unless the rule in Shelley's Case forbids it."

· This construction practically makes another will in every respect, creates two classes of remainders when one only

was intended by the testator, gives validity to an executory devise that was void for remoteness, as the testator died prior to the act of 1853 (now Section 3551 of the Code of Laws 1912), and is different from the construction adopted by his Honor, the Circuit Judge. It is truly said that the construction we have mentioned could be carried into effect unless the rule in Shelley's Case forbids it. That is just the trouble. The rule in Shelley's Case does forbid it. The case of *Cureton v. Little* (S. C.), 111 S. E., 803, is conclusive of this controversy. In that case the property was devised "to my son, John M. Cureton, Jr., during his natural life, and afterwards to his bodily heirs." It was properly held that these words created a fee conditional. We quote as follows from that case:

"The following principles are well established in this state in the construction of wills: 'When a gift is made in one clause of a will in clear and unequivocal terms, the quantity or quality of the estate given should not be cut down or qualified by words of doubtful import found in a subsequent clause. To have that effect, the subsequent words should be at least as clear in expressing that intention as the words in which the interest is given.' *Walker v. Alverson*, 87 S. C., 60, 68 S. E., 968, 30 L. R. A. (N. S.), 115. 'Where an estate is given by will in words of clear and ascertained legal significance, it will not be enlarged, cut down, or destroyed by superadded words in the same or subsequent clauses, unless they raise an irresistible inference that such was the intent of the testator.' *Adams v. Verner*, 102 S. C., 7, 86 S. E., 211. 'Where an estate is devised by clear and unequivocal terms, superadded words of doubtful import must be rejected.' *Adams v. Verner*, 102 S. C., 7, 86 S. E., 211."

If these express words describing a life estate were not sufficient to limit the estate of John M. Cureton, it is scarcely reasonable to suppose that the words herein are

10—S. C.—123

sufficient to limit the estate of Julia Ann Long, and confine it to a life estate.

There is another reason why the judgment should be reversed: There are no words in the will, whatever, showing when the children of Julia Ann (even conceding that they were intended to take) were to go into possession or their remainders become vested. Therefore the presumption is that those were to take who were *in esse* at the death of the testator; and, as none of the children were then living, none could take under the will. *McFadden v. McFadden,* 107 S. C., 101, 91 S. E., 986; *Avinger v. Avinger,* 116 S. C., 125, 107 S. E., 26; *Holly v. Still,* 91 S. C., 487, 74 S. E., 1065. Another reason why the construction hereinbefore discussed cannot prevail is because it fixes the death of the life tenant, as the time when the remainders were to vest, and would exclude the son—W. H. Folk— who died before the life tenant; and there was no provision in the will for his children to take the share to which he would have been entitled. Under the construction that the death of the life tenant was the time fixed for the vesting of the remainders, they were contingent, and could not vest until that time. *Faber v. Police,* 10 S. C., 376.

There is still another reason why the judgment should be reversed: Whenever it is necessary to give the word "children" the meaning of the word "heirs" in order to give force and effect to all the provisions of the will, the Courts will so construe it. *Robinson v. Harris,* 73 S. C., 469, 53 S. E., 755, 6 L. R. A. (N. S.), 330; *Dillard v. Yarboro,* 77 S. C., 227, 57 S. E., 841; *Holley v. Still,* 91 S. C., 487, 74 S. E., 1065.

In *Dillard v. Yarboro,* 77 S. C., 227, 57 S. E., 841, this Court uses the following language:

"As wills are construed with more liberality in carrying into effect the intention of the testator, than in cases involving the construction of deeds, there is a stronger rea-

son for holding that the children named in the deed herein, did not take any interest as such. Under such circumstances the word 'children' must be construed to mean 'heirs of the body' by which an estate tail at common law, and a fee conditional in this state is created. In 3 Jarman on Wills, 174, it is said: 'The rule of construction commonly referred to as the doctrine of Wild's Cases, is this, that where lands are devised to a person and his children, and he has no child at the time of the devise, the parent takes an estate tail; for it is said, the intent of the devisor is manifest and certain, that the children (or issues) should take, and as immediate devisees they cannot take, because they are not *in rerum natura,* and by way of remainder they cannot take, for that was not his (the devisor's) intent, for the gift is immediate, therefore such words shall be taken as words of limitation.' 'Heirs of the body' are words of limitation whereby the parties take by inheritance and not by purchase; therefore, the conveyance of the property by the defendant was as effectual to convey the fee, as if the deed had been to her and her heirs generally, whether she conveyed before or after the birth of issue."

Thus it will be seen that, even if the testator intended to use the words "heirs of her body," in the sense of "children," nevertheless, as Julia Ann had no children at the time of the testator's death, her life estate was by operation of law converted into a fee conditional.

There are several other reasons that could be assigned which show that the words "issue or children of her body" were inadvertently inserted, instead of the words "heirs of her body," but we do not deem it necessary to prolong this opinion. In conclusion we call attention to the fact that the rule in Shelley's Case is a rule of property; that it is more or less arbitrary in its nature; that it is frequently at variance with the intention of the testator; and that the practical effect of affirming the judgment of the Circuit

Court would be to destroy the estate by fee conditional. This is not the first time that the said rule has been attacked.

In the case of *Holley v. Still,* 91 S. C., 487, 74 S. E., 1065, permission was granted to review the case of *Barksdale v. Gamage,* 3 Rich. Eq., 271, which discusses the question now before us. In refusing to overrule that case this Court said:

"The doctrine announced in *Barksdale v. Gamage* has become a settled rule of property; it is arbitrary in its nature, like the rule in Shelley's Case; and we see no greater reason for changing one than the other."

Reversed.

MESSRS. BOWMAN, SEASE, MAULDIN and PEURIFOY, Circuit Judges, concur.

MR. JUSTICE FRASER (separately concurring): The words to be considered are:

"That all the property, both real and personal, which I have willed and bequeathed to said Julia Ann Long, or which shall accrue to her under said will and testament, shall be and remain to her during her natural life and to descend to the heirs of her body, and if she, the said Julia Ann Long, should die without issue or children of her body, the said property to return to my son, Moses Long."

We are told that intention must govern. That is true, but "intention is a term of art, and signifies the meaning of the writing. Even the intention will not be allowed to violate a rule of law." *Sandford v. Sandford,* 106 S. C., 306, 91 S. E., 295. See, also, *Carr v. Porter,* 1 McCord Eq., 71:

"We are no more permitted to enter into the mind of a testator to see what was passing there, than we are into the mind of any other man to ascertain his motive of action. It is from his words we are to ascertain his intention. And whenever a construction has been given by a competent tribunal to any form of words, such decision

has always been held as obligatory on all succeeding Judges
in cases of wills, as in any other cases. Fearne, speaking
of the notion that we must lay aside all precedent in the
construction of wills and that every Judge must be governed
by his own views of the intention of the testator, remarks,
'Such a mode of construing wills, if once fully established,
would open an almost unlimited power to the Judge of dis-
posing of the property of testators, and directing the cir-
culation of it to his own mind.' 'If rules and maxims of
law * * * were to ebb and flow with the taste of the Judge,
or to assume that shape which in his fancy best becomes the
times; if the decision of one case were not to be ruled by
or depend at all upon former decisions in other cases of a
like nature, I should be glad to know what person would
venture to purchase an estate, without first having the judg-
ment of a Court of Justice respecting the identical title
under which he means to purchase.' "

In *Adams v. Verner,* 102 S. C., 7, 86 S. E., 211, the
clause for construction was:

"To my beloved daughter-in-law, Catherine H. Biemann,
wife of H. D. A. Biemann, to her and the heirs of her
body, by said H. D. A. Biemann, absolutely and in fee
simple forever."

On page 19 of 102 S. C., on page 212 of 86 S. E., this
Court says:

"In the first words of this clause, a fee conditional is
given in clear and unambiguous terms. Reason and au-
thority require that something unequivocal must be found
in the subsequent words to show that testatrix did not mean
what she said."

It is perfectly clear to me that the words "heirs of her
body," "issue," and "children of her body" represent the
same idea. The question is: Which shall it be? It is
said that the word "children" is the dominant idea. There
are two expressions that make a fee conditional, to wit,

"heirs of the body," and "issue." There is one word that makes the remaindermen take as purchasers, to wit, "children." There is nothing in the clause to show that the two words must give place to one. Freed from all technicalities, it is manifest that the purpose of the testatrix was that, after the life estate terminated, the estate should go to issue. "Children" is a dangerous word, and not to be lightly substituted. Courts must construe it to mean something else or the result is grievous. If "children" is construed to mean children, then it means children, i. e., immediate offspring, and children of predeceased children are excluded. Under the construction that "children" means "children," the children of predeceased children in their infancy and helplessness are sent adrift entirely deprived of the family estates. We must hold that the testatrix here, and, of course, in other cases, intended to deprive the children of predeceased children of all share in the property. It is well known that men have the tenderest love for their grandchildren.

The word "children" does not stand alone. The words "children of her body" were manifestly used as synonymous with "heirs of her body" or "issue." Besides the will does not purport to give anything to the "children of her body." The gift is to the "heirs of her body." The word "children" is used simply to state a condition that may arise. If "heirs of the body" are to be construed to mean "children," then in other cases, where like words are used, the property must go over to the ultimate contingent remainderman, even though there be children of predeceased children.

It seems to me that this is a fee conditional.

Mr. DeVore, Circuit Judge, concurs.

Mr. Justice Cothran (dissenting): Action for partition of real estate. The controversy between the parties is to be determined by a construction of the will of J. A. C. Long of Edgefield County, then district, who died in 1848.

It appears that he left two children, a son Moses, and a daughter, Julia Ann, then unmarried. To the son he devised a tract of land in fee simple, without any limitations whatever; to the daughter he devised a tract of land with certain limitations which have given rise to the present controversy. She married Dr. H. M. Folk in 1851; of this marriage there were born three children, William H., Clara A. and Edwin H. Folk; William H. Folk died in 1898, leaving a widow, Elizabeth, and one child, Julia; Clara A. Folk married Dr. E. F. Strother in 1870, and died in 1910, leaving only one child, Edwin F. Strother, who died in 1915, leaving a widow, Jane Purdy Strother, and three children, who with her are the plaintiffs herein; Edwin H. Folk is still living, a party defendant in this action, as are also the widow and child of William H. Folk.

On the 4th of November, 1896, Julia Ann Folk, daughter of J. A. C. Long, above referred to, conveyed the land in question to her two sons, William H. and Edwin H. Folk, in fee simple, her daughter, Clara A. Strother, being deprived of any participation therein. Julia Ann Folk died in 1909. In 1919 this action was brought by Jane Purdy Strother (widow of Edwin F. Strother, a son of Clara A. Strother) and her three minor children against Edwin H. Folk (one of the grantees in the deed of Julia Ann Folk above referred to), Elizabeth H. Folk, widow of William H. Folk (the other grantee in said deed), and Julia Folk, the only child of William H. Folk, claiming that under the will of J. A. C. Long his daughter, Julia Ann Folk, took only a life estate in the land, with remainder in fee simple to her three children above named; that at her death in 1909 Clara A. Strother became a tenant in common with the defendants, and entitled to partition; and that her interest descended to her son and from him to his widow and children.

The will contains: (1) A devise of the land to Julia Ann Long (Folk) ; (2) this condition:

"That all of the property both real and personal which I have willed and bequeathed to said Julia Ann Long, or which shall accrue to her under said will and testament, shall be and remain to her during her natural life, and to descend to the heirs of her body, and if she, the said Julia Ann Long should die without issue or children of her body, the said property to return to my son, Moses Long."

The question in the case is whether Julia Ann Folk took under the provisions of the will a fee conditional in the land, or a life estate with remainder in fee simple to her three children, William H. Folk, Clara A. Strother, and Edwin H. Folk.

The case was tried before Judge Townsend upon an agreed statement of facts substantially as above set forth. He filed a decree sustaining the contention of the plaintiffs, holding that Julia Ann Folk took a life estate, with remainder to her children as purchasers, and ordered partition accordingly. The defendants have appealed.

The devise being to Julia Ann for life, with remainder to the heirs of her body, it is apparent that, if she took a fee conditional, it is by force of the rule in Shelley's Case, for the immediate devise to her is of a life estate only; she does not by the immediate terms of the devise take a full and complete estate, either in fee simple or fee conditional; if the life estate devised to her be enlarged into a fee conditional, it can only be done by the application of that rule. It is exceedingly important, therefore, to observe the distinction between a devise which confers a full and complete estate in fee conditional to the immediate devisee, as "to A. and the heirs of his body," and a devise which does not confer such an estate, as "to A. for life with remainder to the heirs of his body." In the first instance the devisee relies upon the express terms of the immediate devise, and

takes a fee conditional; in the other he is compelled to resort to the rule in Shelley's Case for the establishment of his fee conditional.

This is the distinguishing feature between the case 'at bar and that of *Adams v. Verner,* 102 S. C., 7; 86 S. E., 211, which is relied upon by the appellants. That case is not controlling, by reason of very material differences between the estate which passed under the will to the immediate devisee in that case and in the case at bar. In the former the estate was unquestionably a fee conditional by the express terms of the will: "To A., to her and the heirs of her body." It did not require resort to the rule in Shelley's Case to reach that conclusion. In the case at bar the limitation is "to A. for life and (then) to descend to the heirs of her body," which is primarily a life estate in A., but enlarged by force of the rule in Shelley's Case to a fee conditional, provided; the context, and the entire will, for that matter, shows that the estate in remainder was devised to a class of persons who were to take in indefinite succession. In the former, the burden is upon those contesting the construction as a fee conditional to show that that which upon its face is a fee conditional should be construed otherwise; in the case at bar the burden is shifted, and is upon those who claim that the life estate is enlarged into a fee conditional by an arbitrary rule dependent upon the fact that the remainder is to a class of persons intended to take in indefinite succession.

Another material difference, and one upon which great stress was laid in the decision of the *Adams v. Verner* case, is that to give the superadded clause the effect of creating a fee simple to the devisee and her children would let in the heirs of the body, the children, as tenants in common with the immediate devisee, to whom a fee conditional had already been devised. As the Court so clearly shows, the effect of that construction would be that:

"She should not take such an estate at all, and that the whole estate so devised to her should be cut down to an undivided interest therein, as tenant in common with those who might answer the description of 'heirs of her body' at the death of testatrix. Having given such an estate in clear and unequivocal terms, and the superadded words being of doubtful import, they must be rejected as a mere pleonasm."

In the case at bar the estate given to Julia Ann Long "in clear and unequivocal terms" is not a fee conditional, but a life estate, and it cannot be converted by the rule in Shelley's Case into a fee conditional without demonstrating that the estate in remainder to "the heirs of her body" was intended to go to a class of persons in indefinite succession, a result which, in view of the words following, "if she should die without issue or children of her body" (defining the sense in which the previous terms were used), is demonstrably impossible. The distinctive difference in the two cases (*Adams v. Verner,* and the case at bar) are clearly developed in that portion of the opinion (102 S. C., at page 13, 86 S. E., 211) in which the case of *McLure v. Young,* 3 Rich. Eq., 559, is discussed. The devise in that case was to C. for life, remainder to her lineal descendants absolutely and forever; and if she should die without lineal descendants living at the time of her death, then over; it was held that C. took a life estate with remainder to her children as purchasers. The Court in the *Adams v. Verner* case, differentiating *McLure v. Young,* which seems aptly to fit the case at bar, remarks upon three features of the devise in that case wanting in *Adams v. Verner,* but which exist in the case at bar, as influencing the decision: (1) An estate for life was expressly given to the immediate devisee; (2) at her death there was a separate and distinct devise of the property to her lineal descendants (here, to the heirs of her body, practically the same—*Clark v. Neves,* 76 S. C., 487; 57 S. E., 610; 12 L. R. A. (N. S.), 298);

(3) a limitation over in the event of her death without lineal descendants living at the time of her death (here a ·limitation over in the event of her death without issue or children of her body)'.

The case at bar belongs to the class of cases in which the devise does not immediately convey a full and complete estate, but resort must be had to the rule in Shelley's Case. The vital question is whether or not the rule in· Shelley's Case forces the construction that the estate in Julia Ann Folk was a fee conditional; or, stated in another form, the antithesis of the foregoing, whether or not the will, exempt from the operation of that rule, confers upon Julia Ann, as it declares, only a life estate, with remainder in fee simple to the three children above named. If the rule applies, Julia Ann Folk upon the birth of issue had the power, as tenant of a fee conditional, to convey the land in fee simple to the two sons; if it does not apply, Julia Ann took only a life estate with remainder at her death to the two sons and the daughter as joint tenants in fee simple.

Taking a view of the provisions of the will, and seeking the intention of the testator uninfluenced by the technical rules of law, the scheme of the will appears plain and simple. In the first place, the intention of the testator is made manifest that Julia Ann should take only a life estate; he says so in the plainest terms; he then provides that at her death the estate should descend to "the heirs of her body"; in the very next clause he translates this expression into "issue or children of her body." He evidently intended that upon the death of Julia Ann the estate should go to her children, and then, thinking that perhaps some of the children might· die leaving children, he employed the word "issue" so as to include the grandchildren in that event. He then provides for the contingency of Julia Ann dying without children or issue· by a devise over to his son Moses. The controversy is over the power of this Court to carry that intention into effect.

It can be done unless the rule in Shelley's Case forbids it.

The rule is not a rule of construction for ascertaining the intention of the testator; it is a canon of the law, a fixed rule of tenure, artificial and to some extent arbitrary, frequently denying effect to the plainly disclosed intention of the testator. No one would contend that a grant or a devise "to A. for life, remainder to his heirs," evidenced an intention that A. should be vested with the fee, the intention so plainly appearing that he should have the estate only for his life; yet under the rule the evident intention must yield to the canon. So a grant or devise "to A. for life, remainder to the heirs of his body," while plainly indicating that an intention that A. should have the estate for life only, must be held under the same canon to be a fee conditional. The intention in each instance, however apparent, being in conflict with the settled rule of law, is wholly rejected. It is not surprising, therefore, that in many states the rule has been abrogated by statute, and that the Courts in those states where it remains of force, chafing under its Procrustean rigor in defeating the donor's intention, require a strict compliance with the terms and spirit of the rule. The rule formulated by Chancellor Kent more clearly and concisely than elsewhere is:

"When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs or heirs of his body, as a class of persons to take in succession from generation to generation, the limitation to the heirs (or heirs of the body) entitles the ancestor (grantee or devisee) to the whole estate."

Whenever, therefore, a limitation is presented that demands the application of the rule in Shelley's Case, it is a matter of no consequence what the intention of the gran-

tor was; the rule will be applied regardless, and even subversive of that intention. But whether or not such a limitation has been presented is an entirely different question, and in the solution of that question the intention of the testator has controlling influence. Such a limitation is presented where the Court can determine, from the words used, that the testator legally intended that the classified · remaindermen should take in heritable succession as heirs or heirs of the body of the life tenant; that is to say, where the words used must be given that legal effect regardless of his actual intention. Such a limitation is not presented where it appears from the words used, taken in connection with a superadded clause or other parts of the will, that the testator's intention was that they should take by individual acquisition as the direct objects of his bounty. In other words, if they take as heirs or heirs of the body of the first taker, the apparent provision in their favor is inseparably linked with the freehold estate of the first taker; there individual interest is submerged in the first taker's interest, and his initial estate is enlarged into a fee simple or a fee conditional, as the case may be; while if they take by individual acquisition, as the direct object of the donor's bounty, their interest, absolutely divorced from the first taker's estate, stands for itself. It would seem to be a sufficient logical justification of the rule that, if the remaindermen are intended (actually or by legal force of limitation) to take as the heir or heirs of the body of the first taker, the first taker is obliged to be vested with an estate of inheritance capable of devolution upon them. This would not occur if his estate should be limited to the life estate conferred in the first instance, and by legal necessity his estate is enlarged by force of the very words used by the testator compelling that enlargement. If, however, they do not take as such heirs, but represent a class upon which the legal title has been conferred by the will, to come into possession at the efflux of the preceding life estate, there

is no necessity for this species of legal legerdemain; they take by individual acquisition, and not by heritable succession.

The thought is so clearly and forcibly expressed by Mr. Justice Brown in the case of *Kemp v. Reinhard,* 228 Pa., 143, 77 Atl., 436, 29 L. R. A. (N. S.), 958, that a full quotation from his opinion may be pardoned:

"Though the intention of the testatrix may have been to give only a life estate to the appellant, if in the devise there was a limitation of the estate to his heirs to take by devolution from him at his death, her intention is overridden by the rule in Shelley's Case; but in every case in which the application of that rule is involved the first question is whether the devisor or grantor intended a limitation of the remainder in fee or in tail as such to the heirs of the first taker, or that there should be the root of a new succession taking directly from the devisor or grantor as purchasers, when the latter intention appears the rule has no place and the intention must be given effect.

"The rule in Shelley's Case is not a means of ascertaining the intention of the testator, nor is it one of the constructions of a will. It is one of law, unbending in its application, when the intention of the testator is' ascertained that the heirs of his devisee of a freehold estate are to take from the devisee *qua* heirs. When such intention is ascertained, the heirs take by descent from the devisee, and there is therefore vested in him an estate of inheritance. Doebler's Appeal, 64 Pa., 9; *Shapley v. Diehl,* 203 Pa., 566. 'It is therefore always a precedent question in any case to which it is supposed the rule is applicable, whether the limitation of the remainder is made to the heirs in fee or in tail, as such, and in solving this question the rule itself renders no assistance. It is silent until the intention of the grantor or devisor is ascertained. But if that intention is found to be that the remaindermen are to take as heirs of the grantee or devisee of the particular freehold, instead

of becoming themselves the root of a new succession, the rule is applied, though it may defeat a manifest intention that the first taker should have but an estate for life. It is very carefully to be noted that in searching for the intention of the donor or testator the inquiry is not whether the remaindermen are the persons who would have been heirs had the fee been limited directly to the ancestor. The thing to be sought for is not the persons who are directed to take the remainder, but the character in which the donor intended they should take. In the very many cases in which the question has arisen whether the rule was applicable, the difficulty has been in determining whether the intention was that the remaindermen should take as heirs of the first taker, or originally as the stock of a new inheritance.' "

The limitation in this case was: To A. for life, remainder to his issue in fee, and should he die without leaving issue living, then over to another son in fee. The rule was held inapplicable.

Now, coming to the question in the case at bar: Did Mr. Long intend that those in remainder, described in the first instance as "the heirs of the body" of Julia Ann Long, should take as technically the heirs of her body, or by individual acquisition as the direct objects of his own bounty? Or, expressed in another way, with the same meaning: Did he intend that they should take in indefinite succession as the heirs of her body, or originally from him, as the stock of a new inheritance? The will contains three provisions to be considered: (1) The devise to Julia Ann in the early part of the will; (2) the phrase indicating a fee conditional, "to her during her natural life and to descend to the heirs of her body"; (3) the superadded limitation, if she "should die without issue or children of her body the said property to return to my son Moses Long." For the sake of brevity they will be referred to

as (1) the primary devise, (2) the fee conditional clause,. and (3) the superadded clause.

As to the primary devise:   There is nothing in the appellant's position that, under the statute (Volume I, Code of Laws A. D. 1912, § 3571) dispensing with the necessity of words of inheritance in a will, Julia Ann took a fee-simple estate, which could not be cut down by any subsequent clause of the will to a fee conditional or a life estate, for the reason that the statute shows plainly that the entire will must be considered, and that the vesting of a fee simple estate cannot take effect except when such result is in harmony with the provisions of the will.   It declares:

"No words of limitation shall be necessary to convey an estate in fee simple by devise, but every gift of land by devise shall be considered as a gift in fee simple, unless such a construction be inconsistent with the will of the testator expressed or implied."

As to the fee conditional clause:   As the learned Circuit Judge remarks, if the paragraph had ended with the devise to Julia Ann Long "during her natural life and to descend to the heirs of her body," there could be no doubt but that under the rule Julia Ann Long would have taken a fee conditional estate.   Taking it alone, without reference to the superadded clause, all of the elements of the rule exist: (1) An estate of freehold is devised to Julia Ann; a life estate,. being an estate of indeterminate duration, fulfills the definition of a freehold estate.   (2) The immediate estate and that in remainder are of the same character, both legal. (3) The instrument creating the estate is a will, an instrument in writing.   (4) The two provisions are contained in the same instrument.   (5) The remainder is to the "heirs. of the body" of the immediate takes.   But the clause apparently conferring a fee conditional upon Julia Ann Long is followed by the superadded clause:

"If she the said Julia Ann Long should die without issue or children of her body, the said property to return to my son Moses Long."

The real storm center of the controversy is as to the effect of this superadded clause upon the question whether the testator intended that the remainder after the life estate, to the "heirs of her body," should constitute a gift to "a class of persons to take in succession from generation to generation" as the heirs of the body of the life tenant, or as gift to such heirs of the body of the life tenant as answered the description of "the issue or children of her body" at the time of her death, they taking not in indefinite succession as heirs of the body or the life tenant, but directly under the will from the testator as the stock of a new inheritance.

It will bear repetition to again emphasize the point that, if a legal construction of the limitation demands the interpretation of indefinite succession, the intention of the donor is absolutely negligible, but that, if by any expression in the will, in a superadded clause or elsewhere, the question does not demand an arbitrary solution, but is open to inquiry, the intention so ascertained will when so construed annihilate the conception of indefinite succession, as direct donees of the testator's bounty, the stock of a new inheritance. That the superadded clause, or, in fact, any other portion of the will, may be resorted to for the purpose of ascertaining the intention of the grantor in this limited particular, is well established; not the intention of the testator as to how the estate should go, but as to the capacity in which the remaindermen should take, whether as heirs of the donee or as direct objects personally of the donor's bounty. *Myers v. Anderson,* 1 Strob. Eq., 344, 47 Am. Dec., 537; *McLure v. Young,* 3 Rich. Eq., 559; *Smith v. Hilliard,* 3 Strob. Eq., 211; *McWhite v. Roseman,* 114 S. C., 177, 103 S. E., 586; *Pearson v. Easterling,* 104 S. C., 178, 88 S. E., 376; *Williams v. Caston,* 1 Strob., 130;

11—S. C.—123

*Ferril v. Talbot,* Riley Eq., 247; *Henry v. Stewart,* 2 Hill, 328; *McCorkle v. Black,* 7 Rich. Eq., 407; *Brummet v. Barber,* 2 Hill, 543; *Reeder v. Sparman,* 6 Rich. Eq., 88; *Rowell v. Hyatt,* 108 S. C., 300, 94 S. E., 113; *Guy v. Osborne,* 91 S. C., 291, 74 S. E., 617; *Carrigan v. Drake,* 36 S. C., 354, 15 S. E., 339; *Waller v. Ward,* 2 Speers, 786.

In *McLure v. Young,* 3 Rich. Eq., 559, the Court says:

"All the authorities admit that a rigid adherence to the letter of this rule would frequently defeat the intention of the testator. 'It is a rule of tenure, which is not only independent of, but generally operates to subvert, the intention.' It must not, therefore, be understood, says Mr. Jarman, that even the technical expression, 'heirs of the body,' is incapable of control or explanation by the effect of superadded expressions, clearly demonstrating that the testator used those words in some other than their ordinary acceptation, and as descriptive of another class of objects."

In *Myers v. Anderson,* 1 Strob. Eq., 344, 47 Am. Dec., 537, it is held that, if the estate limited to the heirs of the body or issue be of a quality or be given to be enjoyed in a way incompatible with the idea that they are to hold it in indefinite succession, this takes it out of the rule in Shelley's Case. The basic principle of the rule is the idea of indefinite succession in the class attempted to be made remaindermen after the preceding particular estate of freehold; and anything in the description of the class as interpreted by other expressions in the writing, or in the quality of the estate, or in the mode or time of its enjoyment, which militates against the conception of indefinite succession will defeat the application of the rule.

In *Smith v. Hilliard,* 3 Strob. Eq., 211, it is held:

"When a testator uses technical terms throughout his will, the Court will not undertake to substitute other words for them or to disregard their legal effect or to adopt their popular instead of their legal meaning; but when from the whole, or a part of the will, it is apparent that the words

were not used in a strictly technical sense which would be
at war with the general objects and the express provision
in another part, the intention must then be .gathered from
the whole will, without giving a preference to any particu-
lar part."

In *McWhite v. Roseman,* 114 S. C., 177, 103 S. E.,
586, the devise was to testator's three daughters; the will
provided that the land should not be sold, and that after
the death of the three daughters it should go to their bodily
heirs. It was held that each daughter took not a fee con-
ditional, but a life estate, with remainder to her children
as purchasers, the words "bodily heirs" having, in view
of other provisions in the will, been used as synonymous
with the word "children."

In *Pearson v. Easterling,* 104 S. C., 178, 88 S. E., 376,
the devise was to A. for life, remainder to the heirs of her
body, to each an equal share, the children of any deceased
child representing the parent. Held that, in construing the
will in its entirety, and to give effect to all of its parts, if
possible, it was clear that the words "heirs of the body"
were used in the sense of "children."

In *Ferril v. Talbot,* Riley Eq., 247, it is held that the
description in the limitation over of "issue" as those living
at the death of the first taker is explanatory of the sense
in which the word was used in the devise to A. and the
lawful issue of her body.

"Where, upon default of issue living, the limitation over
must necessarily take effect, the restraining words in the
clause creating the limitation over, may be considered to
apply to the preceding clause containing the express bequest
to issue, as if the contingency were written, 'in case of his
death without leaving then living such issue as is before
mentioned.' " *Waller v. Ward,* 2 Speers, 786.

"The word 'issue' would of itself have the same meaning
in both clauses, viz.: lineal descendants; but as in the latter
clause, by a reference to a fixed time, it is made to em-

brace only the class that then may answer to its meaning, the same reference to time is construed to apply to the former clause, because of the connection resulting from the one disposition being substituted for the other." Id.

"But when we consider the case of a gift to A. and his issue, and if he should die without leaving issue over, we are called upon to enquire how the technical sense of the direct gift has been explained; and although where in the case just propounded, we see that the limitation over is to take effect only in case of death without issue, and in that case whensoever it may happen, we may conclude that the issue which might be alive at the death was intended to be designated in the first gift." Id.

"To A. and his issue, but if he should die without leaving issue living, then over to B., according to Henry and Means (2 Hill, 328) gives a life estate to A. with remainder to the issue as purchasers, with limitation over to B." Id.

The case of *Carrigan v. Drake,* 36 S. C., 354, 15 S. E., 339, involved the construction of a deed. The conveyance was (omitting the trust provision) to A. for life, remainder to the heirs of her body, with leave to the trustee, should he deem it best for the interests of A. and her children, to sell the property and invest the proceeds. The question was whether A. took a fee conditional under the rule in Shelley's Case, or that the words "heirs of her body," in view of the later clause, should be construed as "children." The Court held that, the use being unexecuted, the rule in Shelley's Case did not apply, but that, if it were necessary to do so, the Court would hold that the use of the word "children" in the same clause where the words "heirs of her body" occur would sufficiently indicate the purpose of the grantor to create a new stock of inheritance, and that the rule did not apply.

In *Guy v. Osborne,* 91 S. C., 291, 74 S. E., 617, the devise was to A. for life, remainder to his surviving issue, but if he should die without any surviving issue "the

said lands herein bequeathed *to his children*" to go over. Held that, particularly in view of the underscored expression, the *"surviving issue"* was used in the sense of children, which pretermitted the application of the rule in Shelley's Case, and that A. took a life estate with remainder to the surviving children of A. as purchasers. In that case the words "to his children," used in an obiter fashion, in connection with an imperfect description of the land, was declared explanatory, definitive of the sense in which the testator intended to use the words "surviving issue." *A fortiori* should the same result follow when the explanatory words are used in direct apposition with the remainder clause.

In *Rowell v. Hyatt,* 108 S. C., 300, 94 S. E., 113, the devise was to A. for life, remainder to his legitimate heirs, the children born of his body; if he died without any legitimate issue, then over. Held a life estate in A., with remainder to his children as purchasers, the testator having defined the word "heirs" as he used it to mean "children." The only difference between that case and the case at bar is that the definition of the technical word occurred in the remainder clause instead of in the superadded clause, as in the case at bar. Seeking the meaning which the testator had in mind in using the technical word or words, it does not appear to make any difference where the explanatory words may be found, in the remainder clause or in the superadded clause. "To A. for life, remainder to his bodily heirs; and if she should die without issue or children of her body then over," is as clear an indication of what was meant by "bodily heirs" as if the words "issue or children of her body" were transposed and interpolated after the words "bodily heirs."

In *McCorkle v. Black,* 7 Rich. Eq., 407, the devise was to several during their lives, and after their deaths to their lawful issue; but, if either died without lawful issue, his interest should go to the survivors. It was held that each

took a life estate with remainder to his issue as purchasers. The Court declares:

"Words which create a fee conditional in the direct devise, may be so explained and modified by an explanatory context, as to cut down the fee conditional imported in the first instance, to a life estate, with a remainder to the issue as purchasers."

In *Reeder v. Spearman,* 6 Rich. Eq., 88, the devise was to A. and to his children after his death, and, in event of his dying without issue, then over. Held that A. took a life estate with remainder to his children as purchasers. In that case the more general expression, "dying without issue," is found in the limitation over, the more particular expression "to his children" in the direct devise; in the case at bar the converse is true; in ascertaining the intention both expressions must be considered, and it makes no difference where the more particular one may be found.

In *Brummet v. Barber,* 2 Hill, 543, almost if not quite the identical question arose. The legacy was to A. and the heirs of her body, but if she should die without children, then over. This presented a stronger case of fee conditional than the case at bar, for there a fee conditional was directly created, while here it can only be implied from the application of an arbitrary rule. After expressing the view that the rule should be the same as to real estate and personal property; the Court held that the expression in the clause containing the contingency upon the happening of which the limitation over took effect declared the meaning of the previous words, "heirs of her body," to be "children"; if she should die without children; or, as in the case at bar, if she should die without lawful issue or children of her body; that a limitation over on the failure of children was ruled valid.

In *Whitworth v. Stuckey,* 1 Rich. Eq., 404, the devise was to A. for life, remainder to the lawful issue of his body, and if he should die without lawful issue, then over.

It was held that A. took a fee conditional, upon the ground that the limitation to the lawful issue of his body indicated an indefinite line of succession, and was therefore too remote as an executory devise.

In *Adams v. Chaplin*, 1 Hill Eq., 265, the devise was to A., his heirs and assigns forever, but, if he should die without lawful heir, and before attaining his majority, over. It was held that A. took a fee simple estate defeasible upon his death without issue. The distinction between that case and the one at bar is apparent: In the first place, the devise there was to A. and his heirs; in the case at bar it is to A. for life, remainder to the heirs of her body; in the second place, the limitation over was upon an indefinite failure of heirs; in the case at bar it is upon the failure of issue or children at the death of Julia Ann.

If, as appears unquestionably from the authorities, the superadded clause may be resorted to for the purpose of ascertaining the intention of the testator, and, as has been frequently held, it is permissible to transpose the expressions in a will for the same purpose, we would have the entire clause reading thus: "To her during her natural life, to descend to the heirs of her body, the issue or children of her body, and if she * * * should die without issue or children of body," then over. As to the construction of such a clause there could be no controversy.

Another reason exists for construing the words "heirs of her body" as "issue or children of her body." It is a settled principle that, where there is a limitation over upon the failure of a certain class, the presumption is that the remainder was intended to be for the benefit of those upon the failure of whom the estate is given to others; in other words, the meaning of the words descriptive of the classified remaindermen, in the first instance, is translated into the terms used as descriptive of the class last referred to. Here there is a limitation over to Moses Long upon the failure of a certain class, "the issue or children of her

body"; the presumption being that the remainder was intended for the benefit of those upon the failure of whom the estate was given to Moses Long, the necessary effect is to substitute the words, "the issue or children of her body" for the words "heirs of her body," or to insert them in the clause, "to her during her natural life and to descend to the heirs of her body." So that the entire clause would read, "To her during her natural life and to descend to the issue or children of her body," or by inserting these words after the words "heirs of her body," as explanatory of the testator's intention, making him in fact the translator of his own words, "To her during her. natural life and to descend to the heirs of her body, the issue or children of her body."

In *Williams v. Caston*, 1 Strob., 130, the devise was to A. "during the term of her natural life, and then to descend to her issue; and if she should die without any living issue, her share to return back to testator's living heirs." The immediate devise not being a complete estate, fee simple or fee conditional, the rule in *Adams v. Verner* could not be applied. The Court held that the testator's intention "may be collected from the contingency, on the occurrence of which a devise to one and his issue is limited over to another"; that "the estate must be intended to be given for the use of those, on the failure of whom it is given to others." The Court further said:

"When, therefore, a devise is made to one for life, and then to descend to his issue; or after his death, to his issue; with a limitation over, in case the first taker dies, without leaving issue living at the time of his death; the word issue, used in the creation of the estate, must mean the same persons, the failure of whom the devise over is to take effect; that is, children and their descendants."

In this particular case it was held that the expression "dying without leaving issue living at the time of her death" did not indicate an indefinite failure of issue, but

.a failure at the death of the life tenant, and that the word "issue" would be construed as children or their descendants. The words used in the present will are not as strong to show a definite period; the case is cited to establish the principle that the description of the remaindermen is controlled by the description of the class upon the failure of whom the limitation over is to take effect.

In the case of *Barnfield v. Walton,* 2 B. & P., 324, cited with approval in *Carr v. Porter,* 1 McCord Eq., 60, the devise was to A., "her heirs and assigns forever, but if she should die leaving no lawful issue at the time of her death then over." The Court held that it was a valid executory devise; that the word "heirs" meant immediate heirs of the body, and not an indefinite line; evidently upon the principle that the description of the class upon failure of whom the limitation over was to take effect would be ascribed to the class first mentioned. In the light of *Adams v. Verner,* however, there is some doubt of the correctness of this decision. It certainly would have been correct if the devise had been to A. for life, remainder, etc. It would seem that the case falls within the rule of *Bedon v. Bedon:*

"Here the distinction between an express gift to the first taker and no direct devise to issue. There it was sought to establish an estate in the issue by implication, which was denied. In the case at bar this difficulty is not presented, for there is a direct devise to "the heirs of her body." As is pointed out in *Carr v. Porter,* 1 McCord Eq., 60:

"Here the distinction, between an express gift, to the issue and leaving it to implication, is clearly pointed out. In the first they may take by purchase; in the other they cannot take at all. And those words have no other effect than designating a contingency upon which the property is to go over."

In *Carr v. Porter,* 1 McCord Eq., 60, the Court says:

"A man devises to A. for life, he then gives the same fund over to B. after failure of issue of A. The devisees would be entitled to an estate tail in the real estate; * * * but if the testator, without leaving it to *necessary implication,* give the fund *expressly to the issue* (italics by the Court), they are not driven to the former rule, but the issue may take as purchasers; and there is an end of the enlargement of any kind of the tenant for life; for another estate is given after his death to other persons, who are to take by purchase; it no longer rests in conjecture."

The Court cites the case of *Lempley v. Blower,* 3 Atk. 397, and says:

"In that case the testatrix gives to her two nieces and their issue, and if either of them die without leaving issue, etc. There it was held that the issue took as purchasers. But if the estate had been given to the nieces without naming the issue, folowed by those words, if they should die 'leaving' no issue, then over according to the distinction in the above cases, the issue could not have taken at all."

In *Henry v. Stewart,* 2 Hill, 328, the Court says:

"But when there is a direct gift to the issue, then if they are so described, either in that part of the will devising to them, or in that which makes them the contingency on which the limitation over is to depend, as to show that the testator intended that they should, in contemplation of law, be capable of taking the moment the first taker's estate determined, then the devise to them is good."

It is also well established that the questions of the existence of a valid devise over and of the relation of the remaindermen as purchasers are identical. The superadded clause, "if she, the said Julia Ann Long, should die without issue or children of her body, the said property to return to my son Moses Long," constitutes an executory devise in favor of Moses Long. If it is a valid executory devise it follows inevitably that the limitation by way of remainder

to the "heirs of her body, the issue or children of her body," carries the fee to them as purchasers. The rule in Shelley's Case applies only where the limitation is after the similitude of a remainder, and not when it is an executory limitation. The reason seems to be that an executory limitation is not a part of the same disposition with the preceding estate, but is a distinct and alternative disposition. 2 Minor Inst. (1877), 352; Fearne Rem., 276.

In *Murray v. Walker,* 1 Strob. Eq., 193, it was held that—

"The issue take as purchasers, when the property is limited over by limitation, which is not too remote; and that the validity of the gift to the issue, in such cases, depends upon, and is to be tested by, the remoteness or sufficiency of the limitation."

In *Ferril v. Talbot,* Riley Eq., 247, the same will which was construed in *Henry v. Stewart,* 2 Hill, 328, was under consideration. There the devise was to A. and the lawful issue of her body forever; but if she should die without leaving lawful issue of her body alive, then over. In an extremely learned and interesting opinion delivered by Chancellor Harper, and concurred in by Chancellors Desaussure, Johnson, O'Neall, and Gantt of the Court of Appeals (Bailey Eq., 535), it was held that A. took a life estate with remainder to her issue as purchasers. The turning point in the decision being the validity, goodness, as it is quaintly expressed, of the limitation over, which was held good by reason of the expression "die without leaving lawful issue of her body alive." The limitation over being good, not too remote, that conclusion determined the point that the issue took as purchasers.

In the case last cited the learned chancellor says:

"Throughout the whole of the English cases, where there is a limitation to one, and his issue, or the heirs of his body, or any equivalent words, the questions whether the issue take as purchasers, or the limitation over be good, and

whether the first taker takes an absolute estate, or the limitation over be void, are universally assumed to be identical. When the question is as to the goodness of the limitation over, the inquiry is, whether the first taker takes for life or an absolute estate, and the contrary."

He quotes from an English case as follows:

"As in *Theebridge v. Kilburne,* 2 Ves., 233, where the limitation was to a daughter for life and immediately from and after her death, for the heirs of her body, and on failure of such issue, over, the question of the heirs of the body taking as purchasers, and of the goodness of the limitation over, are, throughout, treated as the same."

This being true the decision of the question whether or not the executory devise to Moses Long is valid determines the issue whether or not the classified remaindermen take as purchasers, and that validity is determined by the issue whether or not the limitation over is void for remoteness. In the first place it may be observed that, in order to carry out the intention of the testator, the Court leans to a construction which will not defeat the limitation over, and will in doing so construe apparently technical expressions in their popular sense. In many cases the terms issue or heirs of the body are interpreted to mean children, for the sake of supporting the limitation over. *Mathis v. Hammond,* 6 Rich. Eq., 121.

In *Buist v. Dawes,* 4 Rich. Eq., 421, the devise was to A. for life, remainder to his issue male; in default thereof to his issue female; in default of both, then over. Held a life estate in A. with remainder to his issue, if alive, as purchasers. The Court says:

"If James Boone Perry's estate be a fee conditional, he could have aliened or incumbered it on the birth of issue, so as to defeat utterly the executory devise over, on his dying without leaving issue him surviving. Such a consequence is enough, one would think, to startle the boldest in applying an artificial rule. Indeed, it is plain, that

such a result shows that the whole is an estate to James
·Boone Perry for life, with a good remainder to his issue,
male or female, living at his death, and which words are
synonymous here, with children or grandchildren, and who
consequently take as purchasers, and. with a good executory
devise over to persons *in esse."*

It will be observed that the result so emphatically de-
precated in *Buist v. Dawes* is. exactly the result which will
be consummated by the adjudication of a fee conditional
in Julia Ann. She has already done what was apprehended
in *Buist v. Dawes* (conveyed the estate upon birth of issue) ;
to confirm that conveyance is utterly to defeat the execu-
tory devise over to Moses Long upon her dying "without
.issue or children of her body."

In *Robert v. Ellis,* 59 S. C., 137, 37 S. E., 250, the opin-
ion in which is a masterpiece of a great Judge (Chief
Justice McIver), the devise was to A., without words of
inheritance, and, if he should die before his majority with-
out leaving issue of his body, then over; a later clause pro-
vided that, if he should die (at any time) leaving a child,
such child should inherit the property, and that, if he should
die (at any time) "leaving no lineal issue," the property
*should revert to the estate and be divided among testator's
children. It was contended that A. took a fee simple, or
a fee simple defeasible, or a fee conditional. Each of
these contentions is taken up and annihilated with logic
unanswerable. It is demonstrated that under the statute
(now Section 3571) A. would have taken a fee simple de-
feasible upon his death before majority leaving no issue,
had it not been for the provision in a later clause of the
will above referred to.

"If he took a· fee simple absolute, or a fee defeasible, or
even a fee conditional, that would entirely defeat the pro-
vision made for his surviving children by the terms of the
fourteenth clause of the will (referred to above). If he
took a fee either absolute or defeasible, he would, by devise

or alienation, absolutely destroy the interests intended to be secured to his children by the fourteenth clause; and if he took a fee conditional, he having married and had issue born, he could likewise destroy such interests by alienation in his lifetime. It seems to us, therefore, absolutely necessary to construe the will as giving only a life estate to John H. Robert, Jr., with remainder to his surviving children; as, otherwise, the provision made for the child or children of any child of the testator, who dies leaving children, is absolutely nugatory."

Now, considering the superadded clause in Mr. Long's will, "If she * * * should die without issue or children of her body the said property to return to my son, Moses Long," as the counterpart of the fourteenth clause in the Robert will, the conclusion, by comparison with the foregoing, is irresistible that Julia Ann Long cannot have taken a fee simple, a fee defeasible, or a fee conditional without entirely defeating the provision made for Moses Long in the superadded clause; for, following the reasoning in the *Robert v. Ellis Case,* if she took the fee, she could by devise or alienation absolutely destroy the interest intended to be secured for Moses Long, and if she took a fee conditional having married and had issue born, she could likewise have destroyed such interest by alienation in her lifetime, which in fact she has attempted to do. It seems, therefore, absolutely necessary to construe the will as giving a life estate only to Julia Ann Long with remainder to her issue or children, as otherwise the provision made for Moses Long upon the death of Julia Ann without issue or children of her body is absolutely nugatory. This clause must be read out of the will before the estate of Julia Ann can be construed as a fee conditional; for, if it be allowed effective force, and Julia Ann should have died without "issue or children of her body," Moses Long would have taken although Julia Ann may have had issue and conveyed, a right which she might have exercised as the tenant of a

fee conditional; and if this clause had been inserted for
the purpose of preventing a reversion to the testator's es-
tate, it would have defeated an incident of a fee conditional,
reverter upon failure of bodily issue.    In either event the
existence of that ·clause is incompatible with a fee con-
·ditional.

In *McLure v. Young,* 3 Rich. Eq., 559, the devise was
to A. for life, remainder absolutely and forever to her
lineal decendants, and, in case· she die without lineal
descendants  living  at  the  time  of  her  death,  then
·over.    This, it will be observed, presents a ·stronger case
for the construction of the estate in A. as a fee conditional
than the case at bar.    There the remainder after the life
·estate is devised to the lineal descendants absolutely and
forever; here there are no such words attached to the re-
mainder to heirs of the body.    There the contingency upon
which the limitation over shall take effect is an apparent
indefinite failure of the line of descent; here it is a failure
·of issue children of her body which is referable to the death
of the first taker.    The Court held that A. took a life es-
tate with remainder to her lineal descendants as purchasers,
basing their decision largely upon the consideration that
any other construction would destroy the limitation over
to three of his five children.    "Is there any rule or decision
which demands the destruction of this scheme and a sacri-
fice of the manifest intention of this testator?"

The language of the Court in *Myers v. Anderson,* 1
Strob. Eq., 344, 47 Am. Dec., 537, is appropriate:

· "If obliged by the rules of law to extend in perpetuity
the interests of these legatees, which is expressly given for
life, and to declare that the interest which is given to their
issue expressly 'to. be their absolute property,' is no interest
at all; that the absolute property is not in the issue to whom
it is given, but in the mother, to whom it is not given, but
·on the contrary expressly withheld; if I am obliged by the
rule in Shelley's Case to do this, I shall feel that I am sacri-

ficing the intention of the testator, as to which there can be no mistake."·

And in *Buist v. Dawes,* 4 Rich. Eq., 421, Judge Wardlaw, concurring, remarks:

"The special individuals of issue thus indicated would, under our act of 1824, have taken a fee simple."

In *Buist v. Dowes,* 4 Rich. Eq., 421, the devise was to the use of A. for life and at his death to his male issue, or in default thereof to his female issue surviving him, and, upon general failure of issue, over. It was held that A. did not take ·a fee conditional. ·In the dissenting opinion of Chancellor Dargan, an exceedingly able presentation of the opposing view of the Court, he contends that there was nothing in the will indicating a purpose to use the technical words in any other than in that sense, and concedes:

"A bequest (and the same rule would apply, we assume, to a devise) to one and his issue, or the heirs of his body, with a limitation over on his dying without leaving issue at the time of his death will give the issue an estate as purchasers after the termination of the estate for life of the first taker."

*A fortiori,* would this be the result where the direct devise was to A. for life, remainder to the heirs of his body, and, if he should die without lawful children, then over. To sustain this position the chancellor cites *Henry v. Stewart,* 2 Hill, 328, and *Henry v. Archer,* Bailey, Eq., 535. The chancellor further remarked applicable to the case at bar:

"There are many cases in which a gift or devise to a person for life, and after his death to the heirs of his body or the issue of his body have been construed as giving the first taker only a life estate, with a remainder to the issue as purchasers. But this result happens by force of the context, in which words are used, which modify and restrict the meaning of the words heirs of the body or is-

sue, so as to make them designated a particular class of persons."

In *Ramsay v. Joyce,* McMul. Eq., 236, 37 Am. Dec., 550, the devise was to A. for life; if she should die without issue, the estate was to go over; if she should have an heir before her death, the property, after the life estate in A., should go to such heir. It was held that the word "heir" was used in the sense of child or children, and that the limitation over was good, A. being confined to a life estate, and her child, "heir," taking as a purchaser.

In *Mazyck v. Vanderhorst,* Bailey, Eq., 48, the devise was to A. and to the heirs of her body forever, but, if she should die leaving no lawful heirs of her body, then over. It was held that A. took a fee conditional; that the limitation over was too remote as indicating an indefinite line of succession. At first glance this apparently is a controlling parallelism; but the analogy fails when it is noted that in the case at bar the limitation over is upon the death of Julia Ann "without issue or children of her body," which necessarily fixes the period of the contingency at her death, and not at an indefinite period thereafter. This construction is in conformity with Section 3551, Vol. I, Code of Laws A. D. 1912, a reproduction of the Act of 1853, which, however, being passed after the death of Mr. Long, has in this discussion no controlling force. The authority of this case is greatly shaken by the note thereto and by the subsequent case of *Henry v. Archer,* Bailey, Eq., 535, when the Court says:

"The limitation over, as I have said, is good, because the words, leaving issue, import individuals answering the description of issue, at the time of the death, and it is impossible to give them any other sense."

The Court cites with approval the case of *Morgan v. Morgan,* 5 Day (Conn.), 517. In this case the devise was to A., his heirs and assigns, but, if he should die without children, then over. It was held that the words "die

12—S. C.—123

without children" imported a dying without children at the
death of the first taker, and that the limitation over was
good by way of executory devise.   This appears quite anal-
ogous to the case at bar, with the additional consideration
in favor of the case at bar that there the devise was pri-
marily a direct devise of the fee of A., while here Julia
Ann took primarily a life estate, which could only be con-
strued as a fee conditional by resorting to the rule in Shel-
ley's Case.

In the case of *Sain v. Baker,* 128 N. C., 256, 38 S. E.,
858, the devise was to A., and, in case he died "without
heir or heirs," limitation over to the testator's three daugh-
ters.   It was held that the words "heir or heirs" should
be construed to mean "issue" "or children"; otherwise the
limitation over to the daughters would be in vain.

In the case of *Johnson v. Smith,* 108 Va., 725, 62 S. E.,
958, the devise was to A. for life, then to the heirs of her
body, if any; if no children, to her sisters.   It was held
that the words "heirs of her body" were equivalent to the
word "children," and the effect was to vest simply a life
estate in A.   This is particularly apposite to the case at
bar, as the expression "if no children," in the contingency
defines the sense in which the testator had used the ap-
parently technical words.

In the case of *Puckett v. Morgan,* 158 N. C., 344, 74
S. E., 15, the devise was to A. for life, then to her bodily
heirs, if any; but, if she have none, back to her brothers
and sisters.   It was held that the words "bodily heirs"
meant children, descriptive of a class, and that A. took, not
a fee under the rule in Shelley's Case, but a life estate with
remainder to his children.   The Court said:

"It is also manifest that the testator did not intend that
his daughter should take an estate in fee, for in express
words he devised her an estate for life only, and the context
shows that he intended that her children should take at her

death, and in the event of her death without children, then that her brothers and sisters should receive the property."

Many cases of similar limitation are cited and quoted from in the opinion.

In the case of *Blackledge v. Simmons,* 180 N. C., 535, 105 S. E., 202 (A. D. 1920), the devise was to A. for life, and at her death unto the heirs of her body lawfully begotten, and, in case A. should die without heirs of her body, then to testator's heirs at law. It was held that A. took only a life estate, for the reason that the remainder was devised not to the heirs by descent from A., but to them as purchasers, and that the rule in Shelley's Case did not apply.

In the case of *Wallace v. Wallace,* 181 N. C., 158, 106 S. E., 501 (A. D. 1921), the devise was to A. for life, and after his death in fee to his bodily heirs, if any, and if none to his next of kin. It was held that the words "bodily heirs" meant "children," so that A. took only a life estate with remainder as stated.

In the case of *Reid v. Neal* (N. C.), 108 S. E., 769 (A. D. 1921), the devise was to A. for life, and after her death to her bodily heirs, if any, and if none to return to my estate. It was held that A. took a life estate merely and not the fee under the rule in Shelley's Case.

In the case of *Bird v. Gilliam,* 121 N. C., 326, 28 N. E., 489, the devise was to A. for life and to the heirs of her body; but if she should have no lawful heirs of her body, the land at her death to go to a son of testator. It was held to be no case for the application of the rule in Shelley's Case, as the explanatory words, "If she should have no heirs of her body," limit the words "heirs of her body," that A. took only a life estate. The case at bar is stronger for the remaindermen, in that instead of the contingency, "if she should have no heirs of her body," we have the expression "if she should die without issue or children of her body"; not only indicating "children," but definitive of the expression previously used, "heirs of her body."

In the case of *Williams v. Williams,* 157 Iowa, 621, 138 N. W., 480, the devise was to A. for life, and on his death the said property shall pass and go to the heirs of his body in fee, but if he should die without issue it should go to his sisters; almost identical with the devise here in question. The Court held that the rule in Shelley's Case was not applicable, and that A. took only a life estate devised to him, with remainder to his children and an executory devise over to his sisters.

"It is manifest," says the Court, "that the devise of the remainder to the heirs of his body and in default of issue to others was not intended simply as a limitation, but the words creating the estate were manifestly intended as words of purchase. The rule in Shelley's Case is not controlling, and no other rule should be recognized which will defeat testator's clearly expressed intent."

In *Lane v. Dillon,* 101 S. C., 196, 85 S. E., 369, the devise was to A. and the heirs of his body, for life, remainder to the heirs of his body. Held a fee conditional for the obvious reason that a fee conditional was devised in the first instance, and the subsequent provision that the devisee should take it for life with remainder to the heirs of his body, even if considered without reference to the immediate devise, would under the rule in Shelley's Case be construed as a fee conditional.

In *Powers v. Bulwinkle,* 33 S. C., 293, 11 S. E., 971, the devise was to A. and the heirs of his body, but, if he should die without issue of his body, then over to surviving brothers and sisters. Held a fee conditional defeasible. Stress was laid upon the fact that the words primarily carried a fee conditional; that there was no life estate in A. with remainder to the heirs of his body, calling for the application of the rule in Shelley's Case, which marks the distinction between that case and the one at bar.

In *Bethea v. Bethea,* 48 S. C., 440; 26 S. E., 716, the devise was to A. for life, remainder to B. and to the lawful

issue of his body, and, if B. should die without lawful issue, then over to be equally divided among "my other heirs." It was held that B. took a fee conditional, and was not affected by the superadded clause. The distinction is clear between that case and the case at bar. Omitting the devise of a life estate to A., which has its parallel in the case at bar, and comparing the devise to B. with that to Julia Ann Long: The devise is to B. and to the lawful issue of his body, which is expressly a fee conditional, and cannot be cut down by the superadded clause; in the case at bar the devise is to Julia Ann Long for life, remainder to the heirs of her body, which is not expressly a fee conditional, rather the reverse, and cannot be construed to be a fee conditional without resort to the rule in Shelley's Case, the application of which is defeated by the words of the limitation over, plainly indicating the sense in which heirs of the body were employed.

In *Surles v. McLaurin,* 94 S. C., 308, 77 S. E., 944, the devise was to A. for life, remainder to the heirs of his body, but, if he should leave no such heirs, then over. Held a fee conditional, for the obvious reason that there was nothing to militate against the idea of indefinite succession in the expression "heirs of his body," the remaindermen; clearly within the rule in Shelley's Case.

The limitation over to Moses Long can only be defeated as a valid executory devise by the conclusion that the phrase, "if the said Julia Ann Long should die without issue or children of her body," must be construed as a limitation upon an indefinite failure of issue.

It will be noted that the limitation over is dependent upon the death of Julia Ann "without issue or children of her body." If the condition had been the death of the life tenant "without issue" there is abundance of authority in this state for the position that in a will taking effect prior to the act of 1853 this expression would be construed as meaning an indefinite failure of issue. By the act of 1853

it is provided that "such words shall not be construed to mean an indefinite failure of issue but a failure at the time of the death of such person." It has been held in several cases cited in the note to Section 3551, Vol. I, Code of Laws A. D. 1912, that the act applies only to instruments taking effect since its date; and as the will in the case at bar took effect in 1848 no relief can be had under the act.

Speaking for himself alone, the writer is of opinion that the act of 1853 is the expression of legislative dissatisfaction with the judicial decisions which preceded and produced it, and is of itself a logical and concise statement of the law. It is incomprehensible that a simple expression, "If the life tenant shall die without issue," which is as plain as language could make it, should ever have been contorted into meaning, not what it says, but a failure of issue at some indefinite time in the future; that the expression "dying without issue" which fixes a definite time for the failure of issue should mean to fix an indefinite time for that condition; that that which specifically refers to the death of the life tenant should in fact refer to the extinction of the issue at some indefinite time way down the line.

As Chancellor Johnston remarks in *Hay v. Hay,* 3 Rich. Eq., 384:

"The subtle reasoning upon which the doctrine was founded is constantly baffling the common-sense meaning of terms."

He says in that case further:

"If * * * the limitation over had been upon 'Susan's' dying 'without issue,' it admits of no doubt that this would not have been a limitation over to take effect definitely at Susan's death, but at any time after her death, however remote, when she might prove to be 'without issue.'"

It is not surprising that the great chancellor referred to such a doctrine as "baffling the common-sense meaning of terms"; although it provides that the limitation shall take

effect definitely at Susan's death, it is held to mean something entirely different, as any time after her death.

As Judge Nott says in *Carr v. Porter,* 1 McCord, Eq., 60:

"To give it such a construction, we must not only infer his meaning from what he has not said, but we must presume that he intended something directly contrary to what he has said."

A similar embarrassment was raised in England during the first year of the reign of Victoria, when a statute was passed similar to our act of 1853. It is remarked in *McLure v. Young,* 3 Rich. Eq., 559:

"But, prior to that act, if it could be gathered from the will that the testator did not contemplate an indefinite succession of issue, but a class of persons to take at a particular time, this manifest intention was respected and carried into effect."

There is great force in the dissenting opinion of Judge O'Neall in *Curry v. Sims,* 11 Rich., 489:

"It is strange after the Legislature in 1853 have established as a canon of construction (citing the act), 'the Court should still by strained construction defeat the manifest intention of the testator. After such an expression of the public will, it seems to me it would be well to conform to it, in every case where it is possible."

But, without intending to do more than to express individual dissatisfaction with a rule which 70 years ago met its deserved death in the act of 1853, it is clear that the addition of the words "children of her body" insulate the limitation in this case from the effect of that rule. If the limitation had been the death of the life tenant "without children" it hardly admits of doubt but that the period at which it was to be determined would be the death of the life tenant, for in no sense can the word "children" indicate an indefinite line of succession. In the present will we find both expressions "without issue" and "children of her

body." The expression "without issue" in this clause is either synonymous with "children of her body" or it is intended to take care of the children of a predeceased child at the moment of distribution, the death of the life tenant. In neither case would there be the idea of indefinite failure, and, if not indefinite failure, the limitation over could not be said to be dependent upon a condition too remote, and is valid. The clause therefore is easily susceptible of this construction: If at the time of the death of Julia Ann there be living children, they shall take the remainder in fee; if there should be children of a predeceased child, they being the issue of the life tenant, though strictly not children, they shall take; the period of distribution being fixed as at the death of the life tenant. If, therefore, it can be said that the clause fixed a definite period for the devolution of the estate upon the classified remaindermen, it cannot be deemed as establishing a contingency so remote as indicating an indefinite failure of issue.

The fixing of a definite period not only establishes the validity of the executory devise, which, as has been seen, establishes the relation of the remaindermen as purchasers, but it presents a positive bar to the invocation of the rule in Shelley's Case. The rule does not apply except where the law construes the limitation as denoting an indefinite succession in the remainderman as the heirs or heirs of the body of the life tenant, which construction is inconsistent with the existence of a definite period of distribution or devolution.

In *McLure v. Young*, 3 Rich. Eq., 559, it is said:

"If, from superadded expressions, or from the context, or from other parts of the will, it is manifest that the testator used the term as synonymous with 'children,' or intended to describe a class of persons to take at a particular time, issue will be construed a word of purchase, and not of limitation, and this rule is equally applicable to every other expression used as synonymous with heirs of the

body. Whenever the words 'heirs of the body' would be explained to mean some other class of persons, the same construction is given to the synonym, and the rule in Shelley's Case does not apply."

Language of the strictest technical import, as "heirs of the body," will not control the construction if the intention be clearly manifested to describe thereby a class of persons to take at a particular period. In such case the intention will prevail.

In *Williams v. Caston,* 1 Strob., 130, it is said:

"If the limitation over is made to depend on the event of the first taker dying without leaving issue, living at the time of his death, it is plain that the testator does not use the word in the sense which comprehends an indefinite lineal succession of heirs of the body; but the individuals then living, who answer the description of issue, that is, children and their descendants."

A clear note of Mr. Bailey, State Reporter, afterwards Attorney General, to the case of *Manigault v. Deas,* Bailey, Eq., 298, referring to the case of *Ferril v. Talbot,* Riley, Eq., 247, says:

"The argument has been exhausted by the opinions delivered in these three cases; but it will not be out of place to remark, in conclusion, that the rule recognized and acted on in these cases—that where there is a gift to issue, generally, a limitation over, in the event of dying without issue living at a particular time, will have the effect to limit the generality of the gift to issue, and confine it to the issue living at that time, so as to entitle them to take as purchasers—conforms to, and is a fine illustration of, the canon, deduced by Mr. Preston, * * * that * * * 'the law decides on the gift, allowing the intention to govern, as often as it is clear that the word heirs is not used as descriptive of the class of legal successors, but in designation of an individual, or of particular persons.' "

In *Henry v. Felder,* 2 McCord, Eq., 323, the Court quotes with approval the following from Fearne on Remainders:

"The consequence is, that it is not lawful to limit an executory devise on a general and indefinite failure of issue; namely a failure of issue of the person named whenever it happens, be the time of the event ever so distant. It is equally a consequence of the rule that if the failure of issue is restrained to the death of any person or persons actually living, or to a period not beyond a life and lives in being and 21 years (with a few months beyond), then the contingency is good and the executory devise has its full effect."

In *Ferril v. Talbot,* Bailey, Eq., 535, Chancellor Harper quotes from Sanders as follows:

"But if there be any clause or restriction, whereby it plainly appears that the words, heirs of the body, or issue, were intended as words of purchase, * * * or if the dying without issue is restricted to the death of the tenant for life, whereby the remainder over may take effect, as an executory devise, in either case, the words, heirs of the body, or issue, will operate as words of purchase."

In *Henry v. Felder,* 2 McCord, Eq., 323, where the estate in fee conditional was established, the Court says:

"If the testator had used any words indicative of an intention that the property should go over at the death of the first taker without heirs, it might so have passed; for then the general words 'heirs of her body forever' would have been understood to mean heirs of her body at her death, and not to a perpetual succession."

In 40 Cyc., 1502, it is said:

"The phrase 'dying without issue' or the like standing alone in a will is ordinarily construed at common law, as meaning an indefinite failure of issue, unless a contrary construction is required by statute, or unless the context of the will and the surrounding circumstances show that a definite failure of issue living at the death of the ancestor

named was intended by the testator; and as the Courts look with disfavor upon an indefinite failure of issue, they are quick to seize upon any expression which denotes such a definite failure of issue, as whereupon such death the gift over is to the survivor or survivors, or is to take effect upon the death of the prior holder."

In *Johnson v. Johnson,* McMul. Eq., 345, the devise was to A. and to her children after her. Held equivalent to the words, "To A. and her issue after her," in indefinite succession, creating a fee conditional. The chancellor remarks:

"It would be different if there were a limitation over, in the event of Mrs. Johnson's having no children living at her death. That would show the intention of giving in remainder to the children living at her death, and would restrict the matter to a life estate."

Which is practically the case at bar.

In *Mathis v. Hammond,* 6 Rich. Eq., 402, the devise was to M. for life, remainder to A., and, if he should die without a lawful child, then over. The remainder to A. without words of inheritance carried the fee under the act of 1824, and there was presented a devise to A. and his heirs, with limitation over in the event of his death without a lawful child. The question having been referred to the Court of Errors, composed of all the chancellors and law judges, that Court held that A. took a life estate with remainder to his children as purchasers. Devise to A. during his natural life, remainder to his surviving issue; but, if he should die without any surviving issue of his body, then over. Held a life estate in A., remainder in fee to his surviving issue, children. *Guy v. Osborne,* 91 S. C., 293, 74 S. E., 617.

The case of *Still v. Creech,* 95 S. C., 368, 78 S. E., 1039, presents a much more plausible construction of a fee conditional than the case at bar. The devise was to A.

for life, remainder to the lawful heirs of her body, share and share alike, but, if she should die leaving no such issue alive at her death, then over. The Court held that A. took only a life estate with remainder to the heirs of her body living at her death as purchasers.

In *Moone v. Henderson,* 4 Desaus. 459, the devise was to A. and his heirs, limited in a subsequent clause by a provision that, if A. should die "without an heir," the estate should go over. Held that:

"He could not have meant by the word heir, an heir on the indefinite failure of issue; but he evidently meant a child, for he uses it in the same sentence as synonymous with children"; that accordingly A. did not take a fee conditional.

The case of *Duckett v. Butler,* 67 S. C., 130, 45 S. E., 137, was one of the construction of a deed, where less elasticity is allowed than in the case of a will. That was a conveyance to A. for life, remainder to such heir or heirs as she may hereafter have, and, if she should die leaving no lawful issue, then over. It was held that A. took only a life estate with remainder to her children as purchasers. The Court declares in reference to the clause:

"But in the event of the death of the said Sarah Eliza Butler * * * leaving no lawful issue then" over. "This clearly shows that the grantor intended to use the words, 'heir or heirs,' in a restricted sense and not in the sense of heirs generally."

It was upon this ground that the rule in Shelley's Case was held inapplicable.

In the case at bar the Court is importuned by the appellant to absolutely deny to the testator a right to dispose of his property as he may desire, and to utterly disregard his plainly manifested intention in not one but two particulars. We are asked to hold that, although the testator declared that Julia Ann should have only a life estate, she shall be

accorded the right to convey the property in fee simple; and, although the testator provided that, if Julia Ann died without issue or children of her body, he did not mean that, but meant that after her death, if the issue in an indefinite line at any time in the future became extinct, and that therefore the limitation over was void for remoteness.

The judgment of this Court should be that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES WATTS and MARION, and MESSRS. MEMMINGER, SHIPP, and RICE, Circuit Judges, concur.