## 8228

### HOLLEY v. STILL.

1. UNDUE INFLUENCE—BURDEN OF PROOF—PRESUMPTIONS—EVIDENCE.— Where the condition of a grantor is such that the border line between her weak-mindedness and her imbecility or idiocy is a mere shadow, the burden is on her husband and her stepson, who have obtained all her valuable property by deed of trust, to remove the presumption of undue influence in obtaining the deed. In such investigation the subsequent acts of the parties are admissible to throw light on the transaction.

2. PRINCIPAL AND AGENT—NOTICE.—A party found to be the agent of both mortgagor and mortgagee in negotiating a loan is chargeable with notice of facts which if pursued would have informed him that the mind of the mortgagor was weak, and this notice is imputable to the mortgagee.

3. REAL PROPERTY—NOTICE—PARTIES.—One buying land after filing of *lis pendens* in suit to set deed aside is charged with notice of the rights of claimants and the price paid here indicates they knew of the alleged invalidity of the deed.

4. IBID.—LIMITATION OF ACTIONS—FEE CONDITIONAL—REVERTER—BAR.— Conveyance in fee by tenant of fee conditional after birth and death of issue, bars reversion to heirs of testator.

*Barksdale v. Ramage,* 3 Rich. Eq. 271, *affirmed.*

Before PRINCE, J., Barnwell, April, 1911. Modified.

Action by Olivia Holley *et al.* against W. T. Still, trustee, *et al.* The important part of the Circuit decree is:

"This action came on to be heard before me at Barnwell, at the Spring term of the Court upon the pleadings and proceedings, the case by a consent order had been referred to the master, Mr. O'Bannon, not only to take the testimony, but to report his conclusions on the law and facts, and with leave to report any special matter. The testimony oral and documentary is most voluminous, and has been read to me and most carefully considered. The able report of the master containing his conclusion of law and facts, as well as the able arguments of counsel on both sides, have also been considered. I do not deem it necessary in stating my conclusion to go into all of the questions of law and facts as fully as the master has, but I have considered all of the questions most carefully. I agree fully with the master as to his conclusions, that inasmuch as it is admitted by all parties that the will of John Holley, the elder (which has been construed by the Supreme Court in the case of *Simms* v. *Buist,* 52 S. C. 554), gave to Eugenia Holley, afterward Eugenia Rountree, a fee conditional at common law in the tract of land in question, and although she had issue born of her body, yet inasmuch as she made no alienation during the lifetime of said issue, but only after the death of said issue executed the trust deed of 1905 in question, that she had no power to make said trust deed so as to bar the reverter of the estate to the heirs at law of John Holley, who are the claimants in the action.

"But I do not agree with the master that the words of Chancellor Dargan, in *Barksdale* v. *Gammage,* 3 Rich. Equity 279, are to be regarded simply as *obita dicta.* To the contrary, I think the Chancellor intended to decide and did decide that case upon the idea that after the birth of issue, and after the death thereof, the tenants in fee con-

ditional could make an alienation which would bar a reverter, but I am firmly of the impression that the Chancellor was mislead in construing the quotations which he made from Blackstone. I conceive the law to be, that upon the birth of issue, the condition is not gone only to the extent of alienation during the life of issue, but if the issue dies before the alienation, the disability returns, and any alienation is void and cannot prevent the reverter. If it were otherwise upon the birth of issue simply the tenant would have the power to devise the property, and our Courts have held frequently that no such power obtains.

"This conclusion of law within itself disposes of this important case, because the trust deed made by Eugenia A. Roundtree in 1905, to W. T. Still, trustee, was effective only to pass the title to the land in question during the lifetime of the said Eugenia A. Rountree and consequently the subsequent deeds, papers, mortgages and consents made pursuant to said trust deed are null and void as against the heirs of John Holley, the testator, and the claimants in this action are the legal owners of the real estate in question, and are entitled to partition of same among themselves, or a sale and division of the proceeds.

"Inasmuch, however, as it is an important case, and has been fully considered by the master, I have considered the entire case, and will now state my conclusions concerning the same. I confirm the conclusion of the master on this part of the case, and with him agree that the trust deed of 1905, and all subsequent deeds, and mortgages and consents, should be set aside in equity as null and void. I do not go to the extent of finding that Eugenia Rountree was out and out an idiot, or imbecile, but I do find and am firmly convinced that what Dr. Kirkland, her physician, testified to is the truth; that at the time she executed the trust deed in question, and long previously thereto and ever afterwards, she was extremely weak-minded, decrepit, and that in consideration of her

state of mind, the border line between her weak-mindedness and her imbicility and idiocy was but a shadow.

"Regarding her in such condition of mind, on the 30th day of September, 1905, she was induced by her husband, John B. Rountree, who was a strong-minded man, and her stepson, W. T. Still, and her other stepchildren to execute the trust deed in question, which transferred from her control the valuable property in question, which was worth as the testimony shows from twelve to fifteen thousand ($12,000 to $15,000) dollars, reserving only in herself the right to rents and profits during her lifetime and giving to trustee the power to mortgage the property or sell and convey the same in such parcels as he saw fit upon her written consent. The law on this subject is properly stated by the master, and the relations of these parties to her, that is to say, her husband and her stepson, who had accepted the position as trustee, were such as to raise the presumption that constructive fraud was committed and undue influence was used to bring about this deed for the purpose of transferring the property from her control to the control of Rountree and his children, and to practically deprive her of the same. The law then placed the burden upon the parties interested to show that there was no such constructive fraud, or undue influence, and I find that the evidence surrounding this transaction does not remove the presumption; these parties were bound under the law to show that it was not an honest and just transaction, and this they have failed to show and satisfy me.

"To the contrary, whilst the subsequent transaction between the parties would not effect the legality of the trust deed, yet such conduct will throw light upon the intention of the parties at the time they had Mrs. Rountree to make the transfer. The subsequent transaction certainly established that when there was no necessity to divide up her property during her lifetime, to pay the Hill mortgage which could have been paid by mortgage upon a small portion of

the valuable property, yet, the trustee and the others acting with him obtained her consent and made deeds dividing up this valuable property into tracts in order that they could own same, the trustee's wife getting by the division more than she was entitled to by the deed.

"Further than this, when they could not borrow the money on the property without wiping out her right of support, they influenced her to sign her consent giving away her right of support on the border of the grave.

"All of these transactions reflect back upon the intention of the parties, who unduly influenced her when she signed the trust deed in 1905, and strengthens rather than weakens the presumption that the transaction was a constructive fraud and brought about by undue influence.

"The other question involved as to the agency of J. O. Patterson & Son, of the mortgage company in question is very clear. I concur with the master that they were such agents; they were not only agents of the mortgage company, but they were agents of the mortgagors. There is no necessity to quote authority on that subject, as the authority quoted by him is sufficient. I also agree with the master in his finding of fact, that as such agents they had knowledge or notice of such facts, which if they had used ordinary diligence would have lead them up to the knowledge that this lady at the time she executed the trust deed was a person of very weak mind, and that said deed was intended to transfer her property to the dominion and control of John B. Rountree and his children. This is not imputing any fraud to Messrs. Patterson & Son, but simply imputing to them knowledge of the existence of facts which when known to them ought to have kept them from allowing the mortgage company to loan money upon that property. This being the case the knowledge to them was knowledge to their clients, the mortgage company, and they having such knowledge or facts sufficient to lead up to their knowledge, they have failed

to establish their plea of purchaser for valuable consideration without notice.

"In so far as the defendants, the Easterlings, are concerned, they came into the case as purchasers from Frank Rountree and Mrs. Smith after the *lis pendens* were filed, and of course, with full notice of all the rights of claimants in the case and their deed under the findings as aforesaid is null and void to say nothing of the fact that the prices which they paid of one hundred ($100.00) dollars each, to Mrs. Smith and Frank Rountree is a clear indication that they knew that there was invalidity in the title.* * *"

From the Circuit decree the defendants, W. T. Still, trustee, Lina Still, Geo. W. Easterling, B. C. Easterling and the British & American Mortgage Co., Limited, appeal.

*Messrs. J. O. Patterson & Son, R. C. Holman, R. A. Ellis* and *W. H. Townsend,* for appellants, cite: *Conveyance by fee conditional tenant after birth and death of issue does not bar reversion:* 3 Rich. Eq. 279; 10 Venir Abridg. 268; 3 Bacon Abridg. 428; I Greenleaf's Crime Real P. No. 68; 1 Thomas Code 508; 5 Wall. 284; 74 Ill. 286; 2 Gr. Cr. R. P. No. 27; 40 Vx. 382; 77 Eng. R. 464; 4 Kent Nos. 11, 17; 17 S. C. 551; 7 Wall. 295; 1 Shars. L. Cas. 93; 65 S. C. 354; 77 S. C. 231; 1 Hill Ch. 27; 48 S. C. 440. *Undue influence:* 90 S. C. 196; 89 S. C. 272; 85 S. C. 329; 35 N. J. Eq. 303; 82 N. E. 881; 38 S. C. 215; 64 S. C. 256; 29 Ency. 105; 16 S. C. 344; 127 Ill. 382. *Relationship of the parties:* 44 N. E. 9; 50 N. E. 389; Wig. on Ev., secs. 2487, 2503. *Burden of proof:* 4 Strob. 238; 44 S. C. 378; 16 S. C. 334; 5 Rich. Eq. 458; 14 Vis. 273; 109 N. W. 623; 57 S. C. 283; 103 N. W. 225; 32 S. C. 171; 20 S. C. 232; 52 S. C. 132, 472; 46 N. Y. Supp. 321; 2 Enc. Ev. 810; 26 S. C. 61; 52 N. Y.

274; 57 N. E. 178; 29 N. J. Eq. 187; 10 Fed. Cas. 5257; 2 Pom. Eq. Jur., note 2, sec. 948; 32 Mich. 380. *Transactions between persons of weak mind and others will be closely scrutinized:* 27 Ency. 456; 30 S. C. 456; 94 U. S. 506; 57 S. C. 413; 24 S. C. 1; 2 Sp. 268; 3 Strob. 552; 1 Rich. 80; 16 S. C. 344; 38 S. C. 215. *Agency of J. O. Patterson & Son:* 49 S. C. 346; 44 S. C. 478; 37 S. C. 8; 65 S. C. 527.

*Messrs. Hendersons* and *James A. Willis,* contra, cite: *Title reverted on death of fee conditional tenant, her issue having died before:* 65 S. C. 353; 77 S. C. 231; Wash. R. P. No. 67; Tideman R. P., sec. 37; Bacon's Abridg. 539; Cruise's Digest 83; 1 Coke. Thomas 510; Spence's Eq. Jur. 141; 7 S. C. 144. *Was trust deed obtained by fraud?* 94 U. S. 508; 57 S. C. 428; 30 S. C. 474; 87 S. C. 1; 82 S. C. 199; 61 S. C. 501; 85 S. C. 329; 89 S. C. 572; 4 Des. Eq. 684; 2 W. & T. Lead. Cas. in Eq. 1172. *Mortgage company had notice through Patterson & Son:* 83 S. C. 526; 14 S. C. 312; 34 S. C. 568; 48 S. C. 135; 21 Ency. 584-5; 148 U. S. 439. *Plea of purchaser for value cannot prevail against the legal rights of claimants:* 41 S. C. 304.

June 5, 1912. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. The decree of his Honor, the Circuit Judge, as reported, is affirmed for the reasons therein stated, except as to his conclusion "that inasmuch as it is admitted by all parties, that the will of John Holley, the older, gave to Eugenia Holley, afterwards Eugenia Rountree, a fee conditional at common law, in the tract of land in question, and although she had issue born of her body, yet inasmuch as she made no alienation, during the lifetime of said issue, but only after

the death of said issue, executed the trust deed of 1905 in question, that she had no power to make said trust deed, so as to bar the reverter of the estate, to the heirs at law of John Holley, who are the claimants in the action."

Permission was granted upon the hearing of this appeal, to review the case of *Barksdale* v. *Ramage,* 3 Rich. Eq. 271, which shows that the ruling of his Honor, the presiding Judge, is erroneous, unless this Court overrules the said case, in which the Court uses this language: "Under the purely military system of tenures, that existed under the earlier kings of the Norman dynasty, all feuds were granted for the life of the feudatory only (2 Bl. Com. 55). In process of time, they were extended beyond his life, and at length to the heirs of his body; and in some instances, to his heirs general. The fee conditional, is a remnant of these earlier tenures. 'It was called a fee conditional, by reason of the condition expressed or implied in the donation of it, that if the donee died, without such particular heirs' (of his body), 'the land should revert to the donor.' But if he had such heirs, 'it should remain in the donee' (2 Bl. Com. 110). 'Now we must observe,' says Sir William Blackstone (2 Com. 110), 'that when any condition is performed, it is thenceforth entirely gone; and the thing to which it was before annexed, becomes thenceforth absolutely and wholly unconditional. So that, as soon as the grantee had issue born, his estate was supposed to become absolute, by the performance of the condition, at least for these three purposes: 1. To enable the tenant to alien the land, and thereby to bar not only his own issue, but also the donor, of his interest in the reversion. 2. To subject him to forfeit it for treason; which he could not do, till issue born, longer than his own life. 3. To empower him to charge the land with rents, etc.' The fee conditional, it would thus appear (to the extent laid down in the passage cited), is not different from other estates on condition; in regard

to which a fundamental rule is, that when the condition is once performed, it is thenceforward gone forever."

In speaking of the effect of alienation, after the birth and before the death of issue, and alienation, after the death of issue, the Court says: "The distinction is nice, and apparently arbitrary; but yet is found to be in harmony with the general rules of law, in regard to estates upon condition." The doctrine announced in *Barksdale* v. *Ramage,* has become a settled rule of property; is arbitrary in its nature, like the rule in Shelley's case; and, we see no greater reason for changing one than the other, as the change in either, would tend to unsettle property rights and lead to great confusion.

This principle is affirmed in the case of *Dillard* v. *Yarboro,* 77 S. C. 227, 57 S. E. 841, wherein the Court uses the following language: "Heirs of the body are words of limitation, whereby the parties take by inheritance and not by purchase; therefore, the conveyance of the property by defendant, was as effectual to convey the fee, as if the deed had been to her and her heirs generally, whether she conveyed before or after the birth of issue. The only difference between a conveyance of land, by the tenant in fee conditional before and after the birth of issue is, that where the alienation is before the birth of issue and issue is subsequently born and dies during the life of the tenant in fee conditional, the reverter of the donor is not thereby prevented.' " Citing *Barksdale* v. *Ramage,* 3 Rich. Eq. 271.

Judgment modified.

*Only* MESSRS. JUSTICES WOODS *and* HYDRICK *participate in this opinion and concur.*