## 11390

### WALLACE v. TAYLOR *ET AL.*

#### (120 S. E., 888)

DEEDS—JOINT GRANTEE HAVING NO CHILDREN HELD ENTITLED TO ONE-HALF INTEREST IN FEE.—In the granting clause of a deed, property was granted to two named grantees and to their children "after my death but not before." The habendum clause recited that the named grantees, their children, their heirs and assigns forever, "after my death," were to have and hold the premises mentioned. The property was divided between the grantees prior to grantor's death. At the date of the deed, neither grantee had any children. Both grantees predeceased grantor and died intestate, only one of whom left children surviving. *Held,* that the quoted words were not intended to be applicable to the named grantees, but solely to their children, and the named grantee who died leaving no children took the entire fee in the one-half interest assigned to him.

Before HENRY BUCK, SPECIAL JUDGE, Dillon, October, 1922. Reversed.

Action by Leona Hamilton Wallace by guardian *ad litem* against E. Verbina Taylor and others. Judgment for plaintiff and defendants appeal.

The Circuit Decree was as follows:

This case was heard by me while presiding at the regular term of the Court of Common Pleas for Dillon County, on October 13, 1922. Permission was granted counsel to file

briefs, and these have been taken under advisement and carefully considered.

It is conceded by the parties in interest that the 35-acre tract of land described in Paragraph 2 of the complaint passed under the deed in said paragraph set forth to the grantee, Wally Hamilton, in fee. It is further conceded that Wally Hamilton died intestate on or about the 6th day of September, 1903, leaving as heirs-at-law the parties set out in the pleadings and shown in the testimony. It is further conceded that this tract of land cannot advantageously be divided in kind among parties in interest, due to the number of the heirs and the small acreage in the tract. It is therefore ordered that the Master for Dillon County do sell the said 35 acres on sales day in April, or some convenient sales day thereafter, for cash, and that he do divide the proceeds thereof among the parties in interest according to their respective legal rights.

It is contended that as there is no controversy as to this tract of land and that as its value is not equal to the value of the other lands in controversy, that from the proceeds of the sale of this tract only a very small proportion of the cost should be paid. This is true, but as infants are interested, to wit, the children of Austin Hamilton, the grantee of Mattie Hamilton, the arm of the Court was required to make partition and therefore the proceeds of this land should at least bear a small part of the costs. It is therefore ordered that the Master take testimony, determine what proportion of the costs would be just under the circumstances, and report his conclusions to the Court at its next sitting after the sale thereof.

The real controversy is as to the proper construction of the deed of Whittington Hamilton, Sr., to W. W. Hamilton and W. R. Hamilton, dated March 27, 1900.

When the deed was executed and delivered, neither W. W. Hamilton nor W. R. Hamilton had any children. W. R. Hamilton died in 1903, intestate, without having had

any children and left surviving him his widow. W. W. Hamilton died intestate in 1918, leaving a widow and several children. Whittington Hamilton, the grantor, died in 1919, intestate, leaving as his heirs-at-law children and grandchildren as set out in the complaint. It appears that one daughter of Whittington Hamilton, Sr., predeceased her father, leaving a husband and children.

In the oral argument the attorneys for the parties in interest contended for three different constructions of this instrument:

(1) On behalf of the children of W. W. Hamilton, it was contended that upon the death of W. R. Hamilton without children his interest in the lower or eastern half went to the children of W. W. Hamilton, and that they are now therefore owners in fee of the entire tract of 180 acres.

(2) On behalf of the widow of W. R. Hamilton, it was contended that W. R. Hamilton took an absolute title in fee simple subject to be opened up and to let in any children that might be born afterwards, and that W. R. Hamilton having had no children the entire fee vested in him and upon his death his widow inherited one-half under the statute of distribution, and that the other passed under the statute to his other heirs at law.

(3) On behalf of the other parties, it was contended that the estate granted was a fee conditional, upon the death of W. R. Hamilton without heirs of the body, the lower or eastern half of the tract reverted to the grantor, Whittington Hamilton, and that upon the death of Whittington Hamilton, intestate, the same passed to his heirs at law under the statute of distribution. It was likewise contended that there had been an actual partition between W. W. Hamilton and W. R. Hamilton, with the consent and acquiescence of Whittington Hamilton, and that a certain road was agreed upon as the dividing line.

The Court understands from the brief of counsel, in which their views are briefly and concisely stated, that the

first construction aforestated is not insisted upon; but, even if insisted upon, it could not be sustained. Such construction would read out of the deed so much as provides: "The said W. W. Hamilton to have the upper or western half and W. R. Hamilton to have the lower or eastern half." The contention was made evidently on the theory of survivorship, but it will be observed that the deed itself makes a partition and does not convey to the parties an undivided interest and for all practical purposes, it stands as if two separate deeds had been made.

It seems that the case of *Sease v. Sease,* 64 S. C., 216; 41 S. E., 898, is mainly relied upon as sustaining the second contention. In that case the grant was to "Mrs. Sease and her children," and the habendum was to "Mrs. Sease, her children, heirs and assigns." The record shows that at the time of the grant Mrs. Sease had four children then *in esse* and afterwards others were born. The trial Court held that the word "children" should be constituted as "heirs of the body," and that Mrs Sease took a fee conditional. The Supreme Court did not adopt this view, but held that the word "her" should be construed as meaning "their," and as so changed, Mrs. Sease and her children took the lands as tenants in common. The Court pointed out that by the use of the word "children" three times that it was manifest that the grantor intended to convey some interest to the children, and the fact that the grantor reserved a like estate to W. E. Sease, the husband, showed that he did not intend that the children should take a life estate. The Court likewise pointed out that if it construed the word "children" as meaning "heirs of the body," the deed would then contain repuguant and inconsistent words of limitation; the words "heirs of the body" being words of limitation and inconsistent with the words "heirs and assigns," likewise words of limitation. The construction placed upon the deed by the Supreme Court was such as to give effect to every

part of the deed and was preferred by the Court for that reason.

If either of the grantees, W. W. Hamilton or W. R. Hamilton, had had children *in esse* at the date of the execution of this deed, the Court is of opinion that the case of *Sease v. Sease* would control as to the part conveyed such a one. This would be the proper construction also under the second proposition in Wild's Case, if either of the grantees W. W. Hamilton or W. R. Hamilton had then had children *in esse*. It does not appear from the Sease Case that the after-born children were permitted to take along with those *in esse* at the time of the execution. The Court is silent on this, but later decisions show very clearly that after-born children are excluded unless there is something to clearly show a contrary intention. *McIntosh v. Kolb,* 112 S. C., 1; 99 S. E., 356. *Folk v. Hughes,* 100 S. C., 220; 84 S. E., 713. The second contention cannot be sustained.

The fact that there were no children *in esse* at the time the deed was executed brings this case clearly within the first proposition established in Wild's Case, to wit: "If A. devises his lands to B. and his children or issues, and he hath not any issue at the time of the devise, that the same is an estate tail; for the intention of the devisor is manifest and certain, that his children or issues should take; and as immediate devises they cannot take, for they are not in *rerum natura;* and by way of remainder they cannot take, for that was not his intent, for the gift is immediate; therefore such words should be taken as words of limitation." An estate tail at common law is recognized in this state as a fee conditional. *Barksdale v. Gamage,* 3 Rich. Eq., 271; *Reeder v. Spearman,* 6 Rich. Eq., 92.

The first proposition stated in Wild's Case is expressly recognized in *Dillard v. Yarboro,* 77 S. C., 227; 57 S. E., 841, and in the opinion of the Court this case controls in the construction of the deed under consideration. In that case the deed was to May S. Yarboro with habendum "unto the

said May S. Yarboro, her and her children and her assigns forever." The warranty was likewise to "May S. Yarboro, her and her children and her assigns," The granting clause of the deed construed in *Dillard v. Yarboro* is not set out, but it is evident that they were not words of inheritance therein. It is pointed out with particularity in that case that' the fact that there were no children controlled the construction. The Court said:

"The fact that there were no children *in esse* at the time the deed was executed plays an important part in this case. Even if the grantees named in the deed had been mentioned in a will, the children could not have taken as such, for the season that it would be manifest that they were intended to take immediately, and not after the preceding estate, at which time they were not in existence."

The words in the deed under consideration "unto the said W. W. and W. R. Hamilton and to their children" appear in three places, in the granting clause, the habendum, and the warranty. In the habendum and warranty there is added after the words "their children" the following: "Their heirs and assigns." It is contended that the superadded words just mentioned will prevent the construction given in the Dillard-Yarboro Case. The effect of the contention is that if the word "children" is held to mean "heirs of the body," and that thus a fee conditional was created, then this fee conditional estate would be enlarged into a fee simple, by reason of the superadded words. That such is not the rule of construction is established in the case of *Adams v. Verner,* 102 S. C., 11; 86 S. E., 212, where the rule is clearly stated as follows:

"On the other hand, one of the soundest rules of construction, founded by the sages of the law, the wisdom of which has been approved by succeeding generations as affording security and certainty to estates, is that, where an estate or interest is given in words of clear and ascertained legal signification, it shall not be enlarged, cut down, or destroyed

by superadded words in the same or subsequent clauses, unless they raise an irresistible inference that such was the intention."

This case but reaffirms a number of the cases therein cited, to wit: *Allen v. Fogler,* 6 Rich., 54. *Miller v. Graham,* 47 S. C., 288; 25 S. E., 165. *Clark v. Neves,* 76 S. C., 487; 57 S. E., 614; 12 L. R. A. (N. S.), 298. Especially under the case of *Allen v. Fogler, supra,* if in the case at bar the word "children" is construed as meaning "heirs of the body," the superadded words would not enlarge the fee conditional into a fee. The cases cited are distinguishable from the cases of *Chavis v. Chavis,* 57 S. C., 173; 35 S. E., 507, and *McCullough v. Spencer,* 96 S. C., 264; 80 S. E., 466, where the exception to the general rule is pointed out.

The authority of the case of *Dillard v. Yarboro* has to the mind of the Court never been questioned. It is referred to in *Williams v. Gause,* 83 S. C., 265; 65 S. E., 241. *Holley v. Still,* 91 S. C., 487; 74 S. E., 1065. *Pearson v. Easterling,* 104 S. C., 181; 88 S. E., 376; and in *Lawrence v. Burnett,* 109 S. C., 417; 96 S. E., 144. In none of these cases is there expressed disapproval or criticism of the Dillard-Yarboro Case. As stated by one of counsel, the principle of this case "is to be confined in the application to a particular state of facts a grant to A. and to his children  *  *  *  and there being no children *in esse* at the time of the grant."

The conclusion of the Court is that the word "children" should be construed as "heirs of the body"; that W. W. Hamilton took an estate in fee conditional to the upper or western half of the tract conveyed, and he having had children and not having alienated the land, upon his death the children took the fee therein; that W. R. Hamilton took an estate in fee conditional to the lower or eastern half and, having died without ever having had children, the estate reverted to the grantor, Whittington Hamilton, and upon his

death, intestate, descended to his heirs at law under the statute of distribution.

The Court has not overlooked, but has carefully considered, the cases of *Bank of Prosperity v. Dominick,* 116 S. C., 228; 107 S. E., 914, and *Gaines v. Sullivan,* 117 S. C., 475; 109 S. E., 276. The deed under consideration contains all the elements of such a conveyance as was construed in the case of *Watson v. Watson,* 24 S. C., 228; 58 Am. Rep., 247, to wit: (1) Consideration of love and affection; (2) blood relationship; (3) enjoyment of fee simple in future. But there is no necessity in this case to invoke this now well-established rule, for the intent of the grantor can be arrived at under the construction given by the Court, and even if the rule were invoked, the result would not be different.

It appears from the testimony taken that there was an actual divison made of the lands by W. W. Hamilton and W. R. Hamilton in the lifetime of both of them which in the year 1915 was confirmed by W. W. Hamilton as shown by a plat made by J. M. Johnson, Civil Engineer, dated May, 1915, showing that the upper or western half set apart to W. W. Hamilton, Jr., contained 87 acres and the part or portion belonging to the estate of W. R. Hamilton contained 88.15 acres as represented by two plats. The upper or western half is therefore held by me to be the separate property of the children of W. W. Hamilton. The lower or eastern half, which has been held by me as having reverted to the grantor, Whittington Hamilton, and it further appearing from the testimony that the said part or portion belonging to W. R. Hamilton's estate cannot be advantageously divided in kind among the several heirs at law, it is therefore ordered that the Master of Dillon County do sell for cash the lower or eastern half of said tract of land containing 88.15 acres on a sales day in April, 1923, or some subsequent sales day; that he do distribute the proceeds among the parties entitled thereto as determined herein; that he is hereby given leave to

take additional testimony to establish the rights of parties to said portion.

It is further ordered that the two plats hereinbefore referred to be filed with the record in this cause.

Ordered further that the Master do report to the Court his acts and doings herein.

*Messrs. McColl & Stevenson,* for appellant, cite: *Construction of grant to owner and his children:* L. R. A., 1917-B, 50; 64 S. C., 216. *Covenant to stand seized to use:* 116 S. C., 228; 10 Rich., 68; 12 S. C., 566; 8 R. C. L., 1124, 1125. *Having reverter there is, no fee conditional:* 106 S. C., 252. *Intention was to include after born children:* 28 S. C., 125; 71 S. C., 275; 77 S. C., 227; L. R. A., 1917-B, 80, 81.

*Mr. W. C. Moore,* for certain respondents, cites: *Only children in esse at time of conveyance take:* 112 S. E., 1; 100 S. E., 220. *W. R. Hamilton took in fee conditional and on his death without children it reverted to the estate of the grantor:* 3 Rich. Eq., 271; 6 Rich. Ew., 92; 77 S. C., 227; 102 S. C., 11; 6 Rich. L. 54; 47 S. C., 288; 76 S. C., 487; 57 S. C., 173; 39 S. C., 280; 51 S. C., 558; 96 S. C., 264; 83 S. C., 265; 91 S. C., 487; 104 S. C., 181; 109 S. C., 417.

January 5, 1924.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This action involves the construction of the following deed, executed by Whittington Hamilton, on the 27th of March, 1900:

"Know all men by these presents, that I, Whittington Hamilton in the state aforesaid and Marion County, in consideration of the sum of $100.00 to me in hand paid at and before the sealing of these presents, by W. W. and W. R. Hamilton, also for the natural love and affection which I now bear towards the said W. W. and W. R. Hamilton, in the state aforesaid, the receipt whereof is hereby acknowl-

edged, have granted, bargained, sold and released, and by these presents do give, grant, bargain, sell and release unto the said W. W. and W. R. Hamilton, and to their children after my death but not before,

"All that certain piece, parcel or tract of land situate in Manning township in Marion County and state aforesaid; bounded on the north by lands owned or formerly owned by J. W. Bridgers and lands of S. J. Proctor; east by the lands of the undersigned which he has heretofore deeded to W. W. and W. R. Hamilton; south by lands of J. W. Dillon & Son; west by lands of C. Wilburn; and containing 180 acres, more or less, and to be divided between the said W. W. and W. R. Hamilton, equally, each one-half. The said W. W. Hamilton to have the upper or western half and W. R. Hamilton to have the lower or eastern half.

"Together with all and singular the rights, members, hereditaments and appurtenances to the said premises belonging or in any wise incident or appertaining.

"To have and to hold, all and singular, the said premises before mentioned unto the said W. W. Hamilton and W. R. Hamilton, their children, their heirs and assigns forever, after my death.

"And I do hereby bind myself, my heirs, executors, and administrators to warrant and forever defend all and singular the said premises unto the said W. W. and W. R. Hamilton, and to their children, and their heirs and assigns against me and my heirs and assigns and all other persons lawfully claiming or to claim the same or any part thereof."

The Decree of his Honor, the Circuit Judge (omitting the deed herein reproduced) will be incorporated in the report of the case.

The sole exception is as follows:

"His Honor erred in holding that the deed of W. W. Hamilton, Sr., conveyed to W. R. Hamilton an estate in fee conditional, when he should have held, that he conveyed a fee-simple estate, subject to open and let in his children."

The following statement appears in the record:

"When the deed was executed and delivered, neither W. W. Hamilton nor W. R. Hamilton had any children. W. R. Hamilton died in 1903, intestate, without having had any children, and left surviving him his widow. W. W. Hamilton died intestate in 1918, leaving a widow and several children. Whittington Hamilton, the grantor, died in 1919, intestate, leaving as his heirs at law children and grandchildren as set out in the complaint. It appears that one daughter of Whittington Hamilton, Sr., predeceased her father, leaving a husband and children."

In the granting clause of the deed, it is stated that it was executed in consideration of $100, paid by W. W. Hamilton and W. R. Hamilton to the grantor, also for the natural love and affection which the grantor bore towards W. W. and W. R. Hamilton; the children not being mentioned.

In that clause the grantees named are "W. W. and W. R. Hamilton and to their children after my death but not before." The words "after my death and not before" were not intended to be applicable to W. W. and W. R. Hamilton, but solely to their children, as will be seen by reference to the concluding words in that clause as follows:

"To be divided between the said W. W. and W. R. Hamilton equally, each one-half. The said W. W. Hamilton to have the upper or western half and W. R. Hamilton to have the lower or eastern half."

His Honor, the Circuit Judge, finds as a fact that this division took place in 1915, which was prior to the death of the grantor, who did not die until 1919.

For the same reason the words "after my death," in the habendum, were not intended to be applicable to W. W. and W. R. Hamilton, but solely to the children.

It was not the intention of the grantor that the children of W. W. Hamilton should take under the deed any part of the land assigned to W. R. Hamilton, nor that the chil-

dren of W. R. Hamilton should take any part of the land assigned to W. W. Hamilton.

The authorities cited in the Decree of his Honor, the presiding Judge, to which may be added the case of *Strother v. Folk*, 123 S. C., 127; 115 S. E., 605, show that as W. R. Hamilton did not have a child *in esse* when the deed was executed, there was nothing to prevent W. R. Hamilton from taking the entire fee in the one-half assigned to him.

Reversed.

MESSRS. JUSTICES WATTS and FRASER concur.

MESSRS. JUSTICES COTHRAN and MARION concur in result.

MR. JUSTICE COTHRAN (concurring in the result) : I concur in the result of the opinion of the Chief Justice in this case, but upon a different line of reasoning, which I shall present.

Action for partition. The controversy turns upon the construction of a certain deed executed by W. W. Hamilton, Sr., March 27, 1900, by which a tract of land containing 180 acres was conveyed; to whom, and upon what limitations, are the questions.

The consideration stated in the deed, is $100 and natural love and affection. The granting clause is "unto the said W. W. and W. R. Hamilton and to their children after my death and not before." The granting clause contains also the following, after a description of the tract containing 180 acres, more or less:

"To be divided between the said W. W. Hamilton and W. R. Hamilton equally, each one-half. The said W. W. Hamilton to have the upper or western half and W. R. Hamilton to have the lower or eastern half."

The habendum is:

"Unto the said W. W. Hamilton and W. R. Hamilton, their children, their heirs and assigns forever, after my death."

The warranty is:

"Unto the said W. W. and W. R. Hamilton and to their children and theirs heirs and assigns."

At the time of the execution and delivery of this deed, neither W. W. Hamilton nor W. R. Hamilton, who were sons of the grantor, had any children. Within a short time thereafter, exactly when does not appear in the record of the appeal, but before the death of W. R. Hamilton in 1903, there was an actual division of the 180 acres between the two sons, and each was put into possession, by the grantor of the particular subdivison indicated for him in the deed: W. R. Hamilton going into possession of the lower or eastern half, and W. W. Hamilton of the upper or western lalf. This division appears to have been confirmed later, in 1915, by a survey and plat, made by a surveyor, under the direction of the grantor.

W. R. Hamilton died in 1903, intestate, without ever having had any children born to him, and leaving a widow, who has since died, leaving a number of collateral heirs.

W. W. Hamilton died in 1918, intestate, leaving a widow and several children.

W. W. Hamilton, Sr., the grantor, died in 1919, intestate, leaving as his heirs at law the children and grandchildren named in the complaint.

The complaint is not set out in the record for appeal, and it is not quite clear that both of the tracts, subdivisions of the 180 acres allotted to W. W. Hamilton and W. R. Hamilton, are involved in the partition suit; but inasmuch as the Circuit Judge held that the upper or western half is the separate property of the children of W. W. Hamilton, and makes no decree of partition as to it, and the single exception raises the question only as to the correctness of his decree holding that the deed conveyed to W. R. Hamilton an estate in fee conditional, it is assumed that only the interest of W. R. Hamilton under the deed is to be determined upon this appeal.

The manifest intention of the father was to divide the 180-acre tract equally between his two sons, and to convey to each a particular subdivision of it. This purpose he evidently

supposed could be accomplished by the execution of a single deed instead of a separate deed to each one, for the particular subdivision intended for him. Whether or not this purpose was legally effectuated by the single deed, we are not called upon to decide, as the case has been presented by both sides as if the grantor had made two separate deeds; the one conveying the upper or western half to W. W. Hamilton, and the other the lower or eastern half to W. R. Hamilton, with the limitations contained in the single deed applicable to each. There is no contention that by the deed either son took immediately any interest in the other's subdivision.

The matter then being confined to a determination of the interest of W. R. Hamilton under the deed, it will perhaps present a simpler face to consider it as if the granting clause had been "to W. R. Hamilton and to his children, after my death but not before"; the habendum "to W. R. Hamilton, his children, their heirs and assigns"; and the warranty "to W. R. Hamilton and to his children, and their heirs and assigns."

What interest then did W. R. Hamilton take under the deed, a fee simple or a fee conditional?

The contest is between the heirs at law of the grantor, W. W. Hamilton, Sr., and the collateral heirs at law of the widow of W. R. Hamilton, in reference to the subdivision which was allotted to W. R. Hamilton.

The heirs of the grantor, his children and grandchildren, contend that the deed conveyed to W. R. Hamilton a fee conditional and that upon his death without ever having had any children born to him the estate reverted to the grantor, and upon his death vested in them as his heirs at law.

The heirs of the widow of W. R. Hamilton, on the other hand, contend that the deed conveyed to W. R. Hamilton a fee-simple title; that upon his death in 1903 the estate vested in his heirs at law, who were at that time the widow, the father, and the brothers and sisters, in the proportions of one half to the widow and the other half to the other heirs at

law; and that upon the death of the widow, her title to one-half vested in them, her collateral heirs.

So that the question is whether the heirs of the grantor shall take the whole of the W. R. Hamilton subdivision, or only one-half of it; the other half going to the collateral heirs of W. R. Hamilton's widow.

The primary question in the case is whether or not the granting clause in the deed, considering it as a conveyance "to W. R. Hamilton and to his children," there being no children in existence at that time or afterwards, carries a complete estate, a fee conditional, to W. R. Hamilton. If it does, that ends the controversy, for a complete estate conveyed by the granting clause cannot be enlarged or cut down by any superadded provision in the granting clause itself, in the habendum, in the warranty, or elsewhere in the deed.

The granting clause should contain the nerve, the vital force, of the deed. In many cases, however, it does not do so, but omits words of inheritance or other expressions legally sufficient to carry a complete estate to the grantee. In such case resort may be had to the habendum for the purpose of defining, qualifying, controlling, or enlarging the indefinite estate contained in the granting clause. Thus a grant to A., without words of inheritance, conveys only a life estate; and should the habendum be "to A. and his heirs," the habendum completes the estate, a fee simple, which would fail for indefiniteness otherwise. *McLeod v. Tarrant,* 39 S. C., 271; 17 S. E., 773; 20 L. R. A., 846; 3 Wash. R. P. (5th Ed.), 466.

"When there are no words of inheritance in the premises, in which case the grantee would take only a life estate by implication, there resort may be had to the terms of the habendum to ascertain the quantity of the estate intended to be conveyed, and these terms may, if sufficient, rebut the implication." *McMichael v. McMichael,* 51 S. C., 555; 29 S. E., 403.

But when the granting clause conveys a complete estate, there is neither necessity for nor propriety in resorting to the habendum. *Ingram v. Porter,* 4 *McCord,* 198. *Pitts v. Mangum,* 2 Bailey, 588. *Crawford v. Lumber Co.,* 79 S. C., 166; 60 S. E., 445.

It is contended by the heirs at law of the grantor, W. W. Hamilton, Sr., that by force of the rule in Wild's Case, 6 Coke, 16, W. R. Hamilton took a fee conditional, and that the apparent fee simple conveyed in the habendum is ineffective.

In Tiffany, Real Prop. (Ed. 1912) 58, the author very clearly draws the distinction between a conveyance to one and his children and a devise of the same import, when there are no children *in esse* at the time. He says:

"As the word heirs is necessary in a conveyance to create a fee simple, so it is necessary to create a fee tail, * * * and consequently a grant to a man * * * and his children, gives an estate for life only. * * * A deed to A. and his children cannot, at common law, convey an estate tail, and the word 'children' can have no effect as a word of limitation, defining the interest A. is to take, and must take effect, if at all, as a word of purchase, generally giving the children of A., living at the time of the grant, a joint interest with A. in the property. But in the case of a devise to A. and his children as distinct from a deed, as there is a presumption that the word 'children' is one of purchase, and not one of limitation this presumption is not conclusive; and if the context shows that the word was used in the sense of heirs of the body, the devise will create an estate tail.

"An intention that the word shall take effect as a word of limitation, and not as one of purchase, is presumed from the fact that A. has no children at the time of the devise, since otherwise his children would take nothing, and in such case, at common law, A. takes an estate tail, this being the rule in Wild's Case, frequently referred to"—a very clear indication that the rule has no application to estates conveyed by deed.

In the case of *Sease v. Sease,* 64 S. C., 216; 41 S. E., 898, the deed was construed as if it had read, in the granting clause, "To A. and his children," and in the habendum, "To A. and his children, their heirs and assigns." At the time of the execution and delivery of the deed, the grantee had three living children. The Court held that A. and his children, *in esse* at the time of the execution and delivery of the deed, took the property as tenants in common (joint tenants?). The obvious distinction between that and the case at bar is that at the time of the execution and delivery of the deed W. R. Hamilton had no children.

If this had been a will and not a deed, there can be no doubt but that the rule in Wild's Case, 6 Coke, 16, would have vested in W. R. Hamilton a fee conditional. As the Court says in the case of *Johnson v. Johnson,* McMul. Eq., 345:

"As is said in Wild's Case, 6 Co., 16, which has been followed as familiar law ever since, that if lands are devised to A and his children, who has children living at the time, they will take as joint tenants or tenants in common; but if it be to A. and his issue, or children, and he have no children, he will take an estate tail," which under our law is a fee conditional.

In that case the bequest was to Mrs. Johnson "and to her children after her." The Court said:

"There can be no doubt that the words are such as would give an estate tail in real property in England."

In the case of *Dillard v. Yarboro,* 77 S. C., 227; 57 S. E., 841, the terms of the granting clause are not given; it may be assumed that they were simply "to 'May S. Yarboro.'" The habendum was, "Unto the said May S. Yarboro, her and her children and her assigns forever." The grantee had no children at the time of the execution and delivery of the deed. She conveyed the property to the plaintiffs, and they secured also a deed from her grantor, conveying whatever interest he might have in reversion (upon the theory that the

deed conveyed a fee conditional) to them.   The Circuit
Judge held that the word "children," in the habendum, was
inserted by mistake, and that the word "heirs" was intended
by both grantor and grantee.   In effect he reformed the deed
accordingly, and held that it conveyed a fee simple to the
grantee; and that it was not necessary to decide whether or
not it conveyed a life estate to the grantee and her children,
or a fee conditional to the grantee, as all possible reversionary
interest, in either case, was vested in the grantor, and he had
conveyed it to the plaintiffs.   Upon appeal, this Court, in an
opinion by the present Chief Justice, did not agree with the
construction of the Circuit Judge, but held that the deed
conveyed a fee conditional to the grantee, and that although
she had conveyed the property before the birth of issue, the
deed from her grantor, subsequently made to her grantees
(the plaintiff), conveyed his possible reversionary interest,
and gave the plaintiffs a good title.   The conclusion that the
grantee took a fee conditional under the deed was based upon
the fact that she had no children at the time of its execution
and delivery; that greater liberality is allowed in the construc-
tion of wills than of deeds; and that as the limitation in a
will, under Wild's Case, could have been construed as con-
veying a fee conditional, *a fortiori,* the same construction
would be given when it was contained in a deed.   This is
practically a holding that the rule in Wild's Case is equally
applicable to a deed as to a will.

The *Dillard v. Yarboro Case* has received the apparent
approbation of this Court in the following cases:   *Williams
v. Gause,* 83 S. C., 265; 65 S. E., 241.   *Holley v. Still,* 91
S. C., 487; 74 S. E., 1065.   *Pearson v. Easterling,* 104 S. C.,
181; 88 S. E., 376.   *Lawrence v. Burnett,* 109 S. C., 417;
96 S. E., 144—in all of which, however, the case then under
consideration was differentiated from the *Dillard v. Yarboro
Case.*   No direct authority has been either cited or dis-
covered, justifying the Court in extending the rule in Wild's
Case to a similar provision in a deed.

I am not disposed to follow the inferential application of the rule in Wild's Case to the constructions of deeds, apparently approved in the *Dillard v. Yarboro Case,* for several reasons: (1) No direct authority from any decided case or text-writer has been produced or discovered, justifying such application; (2) as appears from the quotation above from Tiffany, the difference between a deed and a will is so marked as to demand a distinction in this regard, and to render impossible the application of the rule equally to each; (3) under the Mellichamp Case, hereinafter discussed, the deed should have been construed as conveying the estate to May S. Yarboro as trustee for herself and afterborn children.

If the *Dillard v. Yarboro* Case is to be followed, I think that the result is inevitable that W. R. Hamilton took a fee conditional, created in the granting clause by force of the rule in Wild's Case, which was not, and could not have been, enlarged into the inconsistent estate of a fee simple.

In *Mellichamp v. Mellichamp,* 28 S. C., 125; 5 S. E., 333, the conveyance was "to 'Marion R. Mobley and the children she already has and may hereafter bear by her husband, * * * her or their heirs and assigns.'" The grantee had at the time several living children. One child was thereafter born. The question arose whether or not this after-born child was entitled to share in the estate. It was contended by the adverse side that although the intention was plain to include after-born children, the deed could not be given such effect because it would violate the well-established rule of law that "a freehold estate cannot be limited to commence *in futuro,*" and that therefore, as the child was not in existence when the deed was executed, it could never afterwards have the effect of vesting any estate in him. The Court cited a list of South Carolina cases supporting this view, but adds:

"Now while in all of these cases the after-born children were excluded, it was because the Court held that the terms of the instrument—deed or will—did not show an intention to include the after-born children, and not because such

children could not take under the rules by law. On the contrary, it is plainly implied in all of these cases that if the language used had shown an intention to include after-born children, such would have been the effect."

The Court accordingly adopted the suggestion of Judge O'Neall in the case of *Hall v. Thomas,* 3 Strob., 101, that at law the legal estate was in the grantee Marion R. Mobley, and that in equity she could be regarded as a trustee of a springing or shifting use, first for herself and second for herself and the children living and after-born.

The controlling question was whether or not the deed indicated an intention to provide for after-born children. In the Mellichamp Case there could have been no doubt as to that question, for they are expressly mentioned. In the case at bar there is equally as little doubt, for at the time there were no children, and if after-born children were not to be provided for, the provision is utterly senseless.

It seems plain therefore that at law the legal estate was in W. R. Hamilton in fee simple; in equity he held it as trustee for himself and after-born children.

See, also, *Folk v. Hughes,* 100 S. C., 220; 84 S. E., 713. *Gist v. Gist,* 111 S. C., 184; 97 S. E., 240. *McIntosh v. Kolb,* 112 S. C., 1; 99 S. E., 356. *Holeman v. Fort,* 3 Strob. Eq., 66; 51 Am. Dec., 665. *Reeves v. Cook,* 71 S. C., 275; 51 S. E., 93. *Dean v. Long* 122 Ill., 447; 14 N. E., 34 (a very instructive opinion).

Another view of the matter: The deed contains all the elements of a covenant to stand seized: (1) Consideration of love and affection the fact that it contains also a money consideration, $100, does not affect the question, *Chancellor v. Windham,* 1 Rich., 161; 42 Am. Dec., 411. *Kinsler v. Clark,* 1 Rich., 170. (2) Blood relationship. (3) Enjoyment of the fee simple in the future. (Both of the facts that the children were to be born, and that the interest was subject to a life estate in the grantor, establish this element.) *Watson v. Watson,* 24 S. C., 228; 58 Am. Rep., 247. *Bank*

*v. Dominick,* 116 S. C., 228. *Gaines v. Sullivan,* 117 S. C., 475; 109 S. E., 276. *Dawson v. Dawson,* Rice, Eq., 184.

The effect of this construction would be that W. W. Hamilton, Sr., the grantor, held the legal estate as trustee for W. R. Hamilton and the after-born children, if any. "By such a covenant, an estate may be limited to a person not *in esse,* if within the considerations of blood or marriage." *Adams v. Ross* (N. J.), 1 Vroom, 505; 82 Am. Dec., 237. *Fearne, Rem.,* 288; *Chedington's Case,* 1 Coke, 154a; *1 Preston, Est.,* 172, 176. *Doe v. Martin,* 4 Term, Rep., 39. *Folk v. Hughes,* 100 S. C., 220; 84 S. E., 713. W. R. Hamilton having died without children, the trustee then having no duty to perform, the statute would execute the use in the heirs of W. R. Hamilton. The result is the same as if W. R. Hamilton should be considered a trustee under the decision in the Mellichamp Case.

I think, therefore, that the result of the leading opinion is right, and that the decree should be reversed.